[Civ. No. 53381. First Dist., Div. Four. Jan. 19, 1984.]

NISSAN MOTOR CORPORATION IN U.S.A.,
Plaintiff and Respondent, v.
NEW MOTOR VEHICLE BOARD, Defendant and Appellant;
DALY CITY DATSUN, Real Party in Interest and Appellant;
MOTOR CAR DEALERS ASSOCIATION OF SOUTHERN
CALIFORNIA, INC., et al., Interveners and Appellants.

COUNSEL

John K. Van de Kamp and George Deukmejian, Attorneys General, N. Eugene Hill, Assistant Attorney General, Harold W. Teasdale and Gordon Zane, Deputy Attorneys General, for Defendant and Appellant.

Dario De Benedictis, Peter Anderson, Adam F. Gambel and Thelen, Marrin, Johnson & Bridges for Real Party in Interest and Appellant.

Richard E. Wilmshurst as Amicus Curiae on behalf of Real Party in Interest and Appellant.

Crow, Lytle, Gilwee, Donoghue, Adler & Weninger, Richard E. Crow and James R. McCall for Interveners and Appellants.

Gibson, Dunn & Crutcher, Robert E. Cooper, Gail E. Lees, Elizabeth A. Grimes and Timothy J. Conley for Plaintiff and Respondent.

McCutchen, Doyle, Brown & Enersen, J. Thomas Rosch and Richard C. Brautigam as Amici Curiae on behalf of Plaintiff and Respondent.

OPINION

**CALDECOTT, P. J.**—Appellants are Daly City Datsun, a new car dealer (hereinafter DCD or franchisee) and the New Motor Vehicle Board, a state agency (hereinafter Board). The respondent is Nissan Motor Corporation in U.S.A. (hereinafter Nissan or franchisor).

In October 1979 Nissan terminated DCD's franchise on the ground that DCD had failed to fulfill the requirements of the franchise for the preceding four years. Pursuant to Vehicle Code[1] sections 3050-3069, DCD filed with the Board a protest against the intended termination of franchise. Following an extensive hearing the administrative law judge found that Nissan had amply demonstrated good cause to terminate DCD's franchise pursuant to section 3061. The Board, however, refused to accept the proposed decision of the hearing officer. Instead, the Board conducted an additional hearing in the matter at the conclusion of which it found among others that although DCD had failed to meet many of Nissan's national franchise requirements, the franchisor had not established that those requirements were reasonable.

---

[1]Unless otherwise indicated, all further statutory references will be made to the California Vehicle Code.

Nonetheless, the Board concluded the DCD had no substantial permanent investment and also that the service facility of the franchisee was substandard and inefficient. Consistent therewith, the Board gave DCD two years to construct a replacement facility to remedy the deficiencies in its existing service facility and held that the protest would be deemed denied and the termination approved if in two years DCD had not built such a replacement.

Thereafter Nissan filed a petition for writ of mandamus in the superior court alleging inter alia that the procedure conducted before the Board violated its due process right and was invalid; that the Board acted without jurisdiction by rendering a conditional order; that the Board abused its discretion inasmuch as its decision is not supported by its findings and its findings are not supported by the evidence. After a hearing the trial court agreed with respondent and held that Nissan had been denied its constitutional right to a fair hearing because of dealer participation in the hearing process; that the conditional order issued by the Board was not authorized by the code; and that there was no substantial evidence supporting the findings and decision of the Board. Consistent therewith, the trial court entered judgment in favor of respondent. DCD and the Board first filed their respective motions for a new trial and following the denial of their motions they pursued the present appeals.

While the parties[2] raise a number of additional issues as well, the seminal question on appeal is whether the trial court correctly determined that owing to the defects in the statute Nissan's constitutional right to procedural due process had been violated in the proceedings before the Board.

In addressing this crucial issue, first we set out the pertinent provisions of the California Automobile Franchise Act (hereinafter Act), (§ 3000 et seq.). Section 3000 provides that the New Motor Vehicle Board which adjudicates the issues pertaining to the automobile franchises consists of nine members. Under section 3001 four of the nine members shall be new motor vehicle dealers, while the remaining five shall be members of the general public. The statute provides that the franchisor may terminate or refuse to continue any existing franchise only if it gives a prior notice to the franchisee and the Board (§ 3060, subd. (a)) and the Board, based upon the evidence presented by the franchisor, finds that good cause exists for such termination. (§§ 3060, subd. (b); 3061; 3066.)

The critical provisions regulating the procedure of the Board are contained in sections 3050 and 3066. As amended in 1979, section 3050 pro-

---

[2]With leave of this court Chevrolet Motor Division of General Motors Corporation has filed an amicus brief in support of Nissan, while 49er Chevrolet, another car dealer, has filed an amicus brief in support of DCD.

vides in relevant part: "The board shall do all of the following: . . . (d) Hear and consider, within the limitations and in accordance with the procedure hereinafter provided, a protest presented by a franchisee pursuant to Section 3060, 3062, 3064, or 3065. *A member of the board who is a new motor vehicle dealer may participate in, hear, and comment or advise other members upon, but may not decide, any matter involving a protest* filed pursuant to Article 4 (commencing with Section 3060)." (Italics added.)

Section 3066, subdivision (d) likewise underlines that: "*A member of the board who is a new motor vehicle dealer may participate in, hear, and comment or advise other members upon, but may not decide, any matter involving a protest* filed pursuant to this article. Dealer participation shall be recorded in the minutes of the meeting." (Italics added.)

■ Nissan vigorously contends (as it had in the court below) that the statutory scheme set out above is fundamentally unfair inasmuch as it fails to provide an impartial and unbiased body, a quintessential requisite for a fair hearing and due process, for the purpose of adjudicating the dealer-manufacturer disputes. More accurately, Nissan argues that, when read along with section 3001, sections 3050, subdivision (d) and 3066, subdivision (d) are unconstitutional because they ensure a lopsided participation of the car dealers in the Board proceeding without any representation by the manufacturers and thereby deny the manufacturers the right to a fair hearing by an adjudicatory body free from bias and financial interest. For the reasons which follow we agree with respondent and conclude that due to the constitutional infirmity of the cited statutory sections the decision of the Board must be held void and null in its entirety.

■ It is well settled that a fair trial in a fair tribunal is a basic requirement of due process. (*In re Murchison* (1955) 349 U.S. 133, 136 [99 L.Ed. 942, 946, 75 S.Ct. 623].) ■ Due process requires a competent and impartial tribunal in the administrative hearings. (*Goldberg* v. *Kelly* (1970) 397 U.S. 254, 271 [25 L.Ed.2d 287, 300-301, 90 S.Ct. 1011].) Even if there is no showing of actual bias in the tribunal, due process is deemed to be denied by circumstances that create the likelihood or appearance of bias. (*Peters* v. *Kiff* (1972) 407 U.S. 493, 502 [33 L.Ed.2d 83, 93-94, 92 S.Ct. 2163].) As the Supreme Court stated in *In re Murchison, supra,* 349 U.S. at page 136 [99 L.Ed. at page 946]: "Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness."

■ In the case at bench, the tribunal is clearly biased and slanted towards the car dealers and such fact appears upon the face of the statute. As cited above, while the code requires that four of the nine members of

the Board be new car dealers, there is no provision whatsoever, that the other parties to the dispute, i.e., the manufacturers be also represented on the Board. Moreover, sections 3050 and 3066, subdivision (d) explicitly provide that the car dealer members of the Board may participate in, hear, and comment or advise other members upon any matter involving the protest, again without the required symmetry of allowing similar participation on the part of the other interested parties, namely the car manufacturers. Unquestionably, this disparity in representation of the parties on the Board creates a substantial likelihood and/or appearance of bias rendering the tribunal and its decision unconstitutional as a matter of law.

In arriving at our decision we are greatly aided by *American Motors Sales Corp.* v. *New Motor Vehicle Bd.* (1977) 69 Cal.App.3d 983 [138 Cal.Rptr. 594], and *Chevrolet Motor Division* v. *New Motor Vehicle Bd.* (1983) 146 Cal.App.3d 533 [194 Cal.Rptr. 270].

In *American Motors* a dealer-franchisee protested a noticed termination of the franchise to the Board. Although a hearing officer found good cause for the termination, similar to the case at bench, the Board rejected the proposed decision, conducted a hearing itself and found that no good cause for the termination had been shown. As in the present case, the franchisor challenged the Board's decision by petitioning the superior court for relief in administrative mandamus. The trial court granted the relief by concluding that sections 3060 and 3066 of the Act violated due process. In affirming the trial court's judgment the appellate court pointed out that the statutory requirement that the nine-man Board consisted of at least four-car dealers meant that the Legislature assumed a legal partisanship making it certain that the dealer interests would be at all times substantially represented and favored on the adjudicating body; and that the challenged Board members had a substantial pecuniary interest in franchise termination cases which potentially prevented a fair and unbiased examination of the issues and raised the distinct possibility that the dealer-manufacturer controversy would not be decided on its merits but rather on the potential pecuniary interest of the dealer members. Based upon these observations the appellate court concluded that "the combination of (1) the mandated dealer-Board members, (2) the lack of any counterbalance in mandated manufacturer members, (3) the nature of the adversaries in all cases (dealers v. manufacturers), and (4) the nature of the controversy in all cases (dispute between dealer and manufacturer) deprives a manufacturer-litigant of procedural due process, because the state does not furnish an impartial tribunal." (*American Motors Sales Corp.* v. *New Motor Vehicle Bd., supra,* 69 Cal.App.3d at p. 992.)

Even closer to the point is *Chevrolet Motor Division* where in an almost identical situation the court was called upon to decide the constitutionality

of sections 3050, subdivision (d) and 3066, subdivision (d), as amended in 1979 (Stats. 1979, ch. 340, §§ 1-2, pp. 1206-1207) and as they read today. In reaffirming the trial court's conclusion that the 1979 amendments to sections 3050 and 3066 did not cure the unconstitutionality of the earlier provisions of the statute (*American Motors Sales Corp.* v. *New Motor Vehicle Bd., supra,* 69 Cal.App.3d 983), the reviewing court emphasized that while under the amended sections the dealer-members of the Board may not decide the controversy (see §§ 3050, subd. (d), 3066, subd. (d), *supra*) they still have the opportunity to participate in the adjudicatory process and unduly influence the neutral members of the Board in its decision-making thereby rendering the procedure both unbalanced and biased. As the court stated: "they [the dealer-members] are permitted to participate actively in hearings on dealer-manufacturer disputes, hear the evidence, and comment upon and advise other Board members in such matters. In other words, although they must stop short of actually voting on a dispute, they may take part in every other aspect of the decisionmaking process, despite their financial interest in the outcome of that process. . . . Because of their ongoing working relationship, public members of the Board may be influenced by arguments or facts suggested by the dealer members but not included in the public record, and the parties themselves may not have the opportunity to respond. [¶] In short, the presence of biased members on the Board presents a substantial probability that decisions in dealer-manufacturer disputes will be made on the basis of inappropriate considerations, and the fact that those members do not technically 'decide' the disputes does not alter that probability. Each of the factors enumerated in *American Motors* is still present." (*Chevrolet Motor Division* v. *New Motor Vehicle Bd., supra,* 146 Cal.App.3d at p. 541.)

In light of *Chevrolet Motor Division,* appellants' additional contentions may be briefly disposed of. ■ The first argument that Nissan was not entitled to raise the constitutional question for the first time in the trial court, is properly answered by the settled rule that a litigant who seeks to challenge the constitutionality of the statute under which an agency operates need not raise that issue in the proceedings before the agency as a condition of raising the issue in the courts (*Chevrolet Motor Division* v. *New Motor Vehicle Bd., supra,* 146 Cal.App.3d at p. 539; see also *State of California* v. *Superior Court* (1974) 12 Cal.3d 237, 250-251 [115 Cal.Rptr. 497, 524 P.2d 1281]; *Chrysler Corp.* v. *New Motor Vehicle Bd.* (1979) 89 Cal.App.3d 1034, 1038-1039 [153 Cal.Rptr. 135].)

■ Appellants' next claim that Nissan should have requested that the dealer members "recuse" themselves from participating in the dispute must be rejected for two reasons. One, under the mandatory provision of the statute the dealer members of the Board constituted almost half of its total

membership (§§ 3000, 3001) and as members they were authorized to participate in franchise disputes (§ 3050, subd. (d)). Two, as *Chevrolet Motor Division* aptly underscores, due to the aforestated reasons the recusal of the dealer members clearly was not intended by the Legislature (*Chevrolet Motor Division* v. *New Motor Vehicle Bd., supra,* 146 Cal.App.3d at p. 540).

Appellants' last contention that in light of *Andrews* v. *Agricultural Labor Relations Bd.* (1981) 28 Cal.3d 781 [171 Cal.Rptr. 590, 623 P.2d 151], *American Motors* has questionable validity, may also be disposed of in a brief fashion. While the Supreme Court expressed the view in *Andrews* that an administrative law officer with expressed or "crystallized" political or legal views cannot be disqualified on that basis alone, even if those views result in an appearance of bias, the court explicitly stated that no proof of actual bias is required for disqualification when, as in the present case, the judicial or quasi-judicial officer has a financial interest or economic stake in the controversy (*Andrews* v. *Agricultural Labor Relations Bd., supra,* 28 Cal.3d at p. 793, fn. 5).

In summary we have concluded that the Board is unlawfully constituted and its procedure violates the basic precepts of due process to decide disputes between manufacturers and dealers. The Board decision is invalid.

In the light of this conclusion the additional issues raised by the parties need not be reached.

The judgment is affirmed insofar as it holds that the proceedings before the Board were unconstitutional (paragraphs (1) and (2). The provisions of the judgment commanding the Board to enter a new decision to the effect that good cause was shown for the termination of the franchise and Nissan Motor Corporation was entitled to terminate the franchise in dispute are reversed. The case is remanded for further proceedings before a Board acting without the participation of the new motor vehicle dealer members (§ 3010).

Poché, J., and Panelli, J., concurred.

Petitions for a rehearing were denied February 16 and March 16, 1984, and petitions of real party in interest and appellant and interveners and appellants for a hearing by the Supreme Court were denied April 18, 1984.