Filed 9/29/16

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| BRANDEN LEE HALL,<br><br>     Petitioner,<br><br>     v.<br><br>THE SUPERIOR COURT OF SAN DIEGO COUNTY,<br><br>     Respondent;<br><br>DEPARTMENT OF MOTOR VEHICLES et al.,<br><br>     Real Parties in Interest. | D068516<br><br>(San Diego County<br>Super. Ct. No. 37-2014-00023355-CU-WM-CTL) |

Proceedings in mandate challenging an order of the Superior Court of San Diego County, the Honorable Tamila E. Ipema, Judge. Petition granted in part and denied in part.

Law Office of A.P. Zmurkiewicz and A.P. Zmurkiewicz for Petitioner.

No appearance for Respondent.

Kamala D. Harris, Attorney General, Chris Knudsen, Assistant Attorney General, Celine M. Cooper and Alice Q. Robertson, Deputy Attorneys General, for Real Parties in Interest.

The Department of Motor Vehicles (DMV) revoked Branden Lee Hall's driver's license because, after being arrested for driving under the influence, he refused to submit to a chemical test for blood alcohol content. (Veh. Code,[1] § 13353, subd. (a)(2).) Hall filed a petition for a writ of mandate or review (petition) in the superior court, seeking an order directing the DMV to vacate the revocation on the grounds there was no admissible evidence that police properly admonished him that refusing to submit to a blood alcohol test would result in his license being revoked.

While Hall's petition was pending, the DMV hearing officer who upheld the revocation, Alva Garrido Benavidez, pleaded guilty in federal court to taking bribes in exchange for giving favorable treatment to persons arrested for driving under the influence.

Hall amended the petition to allege Benavidez's corruption deprived him of his due process right to a fair hearing. The DMV filed opposition, asserting there was no evidence Benavidez was actually biased in deciding Hall's case.

In a ruling the Attorney General characterizes as "inherently contradictory," the court "denie[d] the writ"—but granted Hall relief by remanding to the DMV for a new

---

[1]     All statutory references are to the Vehicle Code unless otherwise specified.

hearing, stating Benavidez's "criminal conduct while acting as a hearing officer for the DMV . . . raises a red flag with respect to all hearings presided by her."

Unsatisfied with a new hearing, Hall appeals, contending section 13559 required the court to order the DMV to reinstate his driver's license. Hall also contends there is no admissible evidence that police properly admonished him that refusing a blood alcohol test would result in revocation of his driver's license. Additionally, Hall again argues Benavidez's bribe-taking in other cases deprived him of his due process right to a fair DMV hearing.

As explained *post*, we construe the court's order as a remand to the administrative agency to conduct a new hearing—which is not an appealable order. (*Gillis v. Dental Bd. of California* (2012) 206 Cal.App.4th 311, 318 (*Gillis*).) However, because the order is unclear on the question of appealability ("den[ying] the writ," but ordering a new hearing), we exercise our discretion to treat Hall's purported appeal as a petition for a writ of mandate. (*Village Trailer Park, Inc. v. Santa Monica Rent Control Bd.* (2002) 101 Cal.App.4th 1133, 1139-1140 (*Village Trailer Park*).)

We hold that a DMV hearing officer who admits to taking bribes for nearly a decade does not meet the constitutional standard of impartiality. Accordingly, we conclude the court correctly ordered a new administrative hearing. We reject Hall's contention that section 13559 compelled reinstatement of his driver's license in this case. Additionally, we decline to reach the issue of whether police properly admonished Hall about the consequences of refusing a blood alcohol test. Because Hall will receive a new

DMV hearing, that issue must be decided in the first instance by an impartial DMV hearing officer.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Hall Is Arrested for Driving Under the Influence*

On March 22, 2014, after the car Hall was driving rear-ended another car stopped at a red light, La Mesa police arrested Hall for driving under the influence. Hall had two prior convictions for driving under the influence, in 2006 and 2008.

The arresting officer noticed a strong odor of alcohol on Hall's breath and that Hall had red eyes and slurred speech. Police administered field sobriety tests, which Hall did not successfully complete. One of Hall's minor children, a passenger in the back seat of his car, told police Hall had been drinking and several people tried to stop Hall from driving because he "drank too much."

After his arrest, Hall refused to submit to a blood alcohol test. A police officer asked him, "Will you take a breath test?" Hall said, "No." The officer asked, "Will you take a blood test?" Hall said, "Nah, nothing." After obtaining a warrant, police obtained a blood sample from Hall anyway.[2]

### B. *License Suspension Hearing*

Because Hall refused to submit to a blood alcohol test, the arresting officer seized Hall's driver's license, notified Hall his license would be suspended or revoked by the

---

[2]    The parties do not inform us of the test results.

DMV in 30 days, and advised Hall he had 10 days to request a DMV hearing to show the suspension or revocation was not justified.

Hall requested a hearing, which was conducted on June 13, 2014, by Benavidez, a DMV-appointed hearing officer.

The hearing was limited to four issues: (1) Did the police officer have reasonable cause to believe Hall was driving a motor vehicle under the influence of alcohol in violation of section 23152; (2) was Hall lawfully arrested; (3) was Hall told his driving privilege would be suspended or revoked for one, two, or three years if he refused to submit to or failed to complete a chemical test; and (4) did Hall refuse to submit to or fail to complete a chemical test when requested to do so by a peace officer. (§ 13557, subd. (b)(1).)

No witness testified at the hearing. The DMV offered five exhibits into evidence: (1) An "Officer's Statement" indicating police arrested Hall on March 22, 2014, and there was probable cause based on the odor of alcoholic beverage, Hall's bloodshot and watery eyes, slurred speech, and poor physical coordination. The reverse side of this form is dated "9-27-14" and contains the admonishment: "You are required by state law to submit to a . . . chemical test to determine the alcohol . . . content of your blood. [¶] . . . [¶] . . . Because I believe you are under the influence of alcohol, you have a choice of taking a breath or blood test. [¶] . . . [¶] . . . If you refuse to submit to, or fail to complete a test, your driving privilege will be suspended for one year or revoked for two to three years. . . ." The response to "Will you take a breath test" is "No." The response to "Will you take a blood test" is "Nah, nothing"; (2) A seven-page traffic collision

5

report; (3) a one-page "Narrative"; (4) a two-page "Intoxication Report"; and (5) Hall's driving record, showing his prior convictions for driving under the influence and other offenses.

Hall's attorney objected to exhibit 1, the admonition, as inadmissible hearsay. He noted the document shows "3/22/14" as the arrest date, but also states the police gave the required admonition on "9-27-14." Because it is impossible to give an admonishment six months after an arrest, counsel asserted this error "renders the document not an official record under Evidence Code section 1280." Hall's attorney stated, "[T]hat element of Evidence Code section 1280, that being that the entry must be made at or near the time of the event, is not satisfied. We can't tell from the document when that entry was made. The source of information—also doesn't indicate its trustworthiness. The date's clearly off. The method and time of preparation are also suspect." Hall's attorney also argued, "[A]nd any presumption that any official duty has been regularly—performed has been rebutted as well."

Benavidez overruled these objections and received all five exhibits into evidence. Subsequently, Benavidez issued a "Notification of Findings and Decision," sustaining the revocation of Hall's driver's license through July 3, 2017. Benavidez ruled the discrepancy between the "3/22/14" date of arrest and the "9-27-14" date of admonishment was a "clerical error" that did not affect the document's trustworthiness or rebut the official duty presumption.

6

C. *Writ Petition in Superior Court*

On July 15, 2014, Hall filed a petition for a "peremptory writ of mandate and for review" in superior court. Hall asserted the date discrepancy in the chemical test admonition was "substantial and significant," rendering the document inadmissible under the hearsay exception for official records. Hall argued that without the admonition, there was insufficient evidence to sustain a finding he was properly admonished. The petition was set for a February 18, 2015 hearing.

D. *Benavidez Charged with Taking Bribes; Hall's Petition Is Continued*

On February 3, 2015, the United States Attorney filed an information in district court alleging that Benavidez, while presiding over DMV hearings, conspired with certain attorneys to accept bribes in violation of title 18 United States Code section 666(a)(1)(B.[3] The government alleged that Benavidez removed arrest information before it could be entered in the DMV database and unlawfully issued temporary driver's licenses to persons charged with driving under the influence in exchange for approximately $5,000 cash, plus meals, sunglasses, and luxury items "such as designer

---

[3]     Title 18 United States Code section 666 provides in part:  "(a) Whoever, if the circumstance described in subsection (b) of this section exists [¶] (1) being an agent of an organization, or of a State . . . or any agency thereof—[¶] . . . [¶] (B) corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more . . . [¶] . . . [¶] shall be fined under this title, imprisoned not more than 10 years, or both. [¶] (b) The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance."

7

purses." The government alleged Benavidez's bribe taking began in approximately 2005 and continued through August 2014, a period that includes Hall's hearing.

On February 18, 2015, over the DMV's objections, the court granted Hall leave to amend his petition to allege his due process right to a fair administrative hearing was violated because Benavidez was not impartial.[4]

E. *Benavidez Pleads Guilty; Hall Files an Amended Petition*

Meanwhile, on February 3, 2015, Benavidez pleaded guilty to conspiracy to accept a bribe in violation of title 18 United States Code section 666(a)(1)(B), as alleged in count 1 of the information. On February 20, 2015, the district court accepted her guilty plea.

Thereafter, Hall filed an amended petition, repeating the previous allegations concerning the discrepancy between the date of arrest and admonishment, and also alleging, for the first time, that the DMV violated Hall's due process right to a fair hearing because Benavidez, the hearing officer, took bribes in other cases. In an accompanying memorandum of points and authorities, Hall's attorney asserted that due process requires "that the decision maker . . . not be a person who is actively engaged in taking bribes and whose decisions can be bought." Although Benavidez was not bribed in Hall's case, his attorney argued bribes Benavidez received in other cases "invariably raises the concern that, 'If I don't bribe her, she will rule against me'" or cause a person to

---

[4]    The record does not contain any papers filed or lodged in support of or in opposition to Hall's motion for leave to amend, nor any reporter's transcript from a hearing on that motion.

8

believe "'[s]he ruled against me because I didn't bribe her.'"  Citing section 13559, subdivision (a), Hall's attorney asserted the court was required to order the DMV to reinstate Hall's license.[5]

The DMV filed opposition, stating there was no due process violation because Benavidez did not seek a bribe in Hall's case, nor was there evidence she was actually biased in his case.

F.  *The Court Denies the Writ, but Remands for a New DMV Hearing*

The court conducted a hearing on April 20, 2015, and approximately one month later issued a 14-page decision.[6]

In its decision, the court first determined there was sufficient evidence, entirely apart from exhibit 1, the document Hall challenged, to find police properly admonished him about the consequences of refusing a blood alcohol test.

Next, the court addressed Hall's due process argument.  That part of the court's ruling is not a model of clarity, and both Hall and the DMV criticize it.  The Attorney General characterizes the ruling as "inherently contradictory."  Hall's attorney states the remand for a new DMV hearing is "ultra vires."

---

[5]  Section 13559, subdivision (a) provides in part:  "The review shall be on the record of the hearing and the court shall not consider other evidence.  If the court finds that the department exceeded its constitutional or statutory authority . . . , the court may order the department to rescind the order of suspension or revocation and return, or reissue a new license to, the person."

[6]  A minute order dated May 18, 2015, indicates the court heard oral argument; however, Hall elected to proceed on appeal without a reporter's transcript or any substitute.

To begin, the court stated, "The fact Benavidez pled guilty is evidence of her misconduct and that she engaged in criminal conduct while acting as a hearing officer for the DMV, and this fact clearly raises a red flag with respect to all hearings presided by her." However, the court also stated there is "no indication on the facts and the evidence presented that Hall was denied due process." The court explained:

> "However, with respect to . . . Benavidez and any bias she may have had, Hall does not claim that he was offered to participate in the bribery scheme and he refused, or show that because . . . Benavidez took bribes in other cases, his case was necessarily negatively affected because he did not pay a bribe. Except to state he was denied due process in that the hearing was not presided over by an impartial hearing officer, Hall does not state a prima facie case of misconduct in his case, to support the claim he was denied a meaningful opportunity to be heard. As the People [*sic*] point out . . . Benavidez was charged with conduct that benefited the drivers against the DMV. Further, there is no indication on the facts and the evidence presented that Hall was denied due process or that . . . Benavidez' decision in Hall's case was arbitrary and unsupported by the record."

Nevertheless, the court stated she was "greatly disturbed by the fact that a hearing officer assigned to [Hall's] case, who is in the position of authority making important decisions that affects people's life [*sic*], was corrupt and was convicted in Federal Court of bribery." The court added, "The perception of bias in trial proceedings destroys the public's confidence in our justice system and must not be tolerated."

Citing Code of Civil Procedure section 1094.5, subdivisions (e) and (f), together with two published appellate cases involving biased decision makers in administrative

10

hearings (the court in each remanded for a new administrative hearing),[7] the court concluded, "[B]ased on the law and in fairness to both parties, the court denies the writ with instructions to remand the case for a new administrative hearing. This way, [Hall] is afforded a fresh start with a new fair and impartial hearing officer."

Hall timely filed a notice of appeal from what his attorney characterized as a "final decision on Petition for Writ of Mandate."

DISCUSSION

I. *ADMINISTRATIVE LICENSE SUSPENSIONS, IN GENERAL*

California has enacted an implied consent statute providing noncriminal sanctions for an individual's refusal to submit to a blood alcohol test when arrested for driving under the influence of alcohol or drugs.[8] Section 23612, subdivision (a)(1)(A) provides in part:

> "A person who drives a motor vehicle is deemed to have given his or her consent to chemical testing of his or her blood or breath for the purpose of determining the alcoholic content of his or her blood, if lawfully arrested for an offense allegedly committed in violation of Section 23140 [under age 21, 0.05 percent alcohol] , 23152 [driving

---

[7]  *Nissan Motor Corp. v. New Motor Vehicle Bd.* (1984) 153 Cal.App.3d 109 (*Nissan Motor Corp.*) and *Nasha v. City of Los Angeles* (2004) 125 Cal.App.4th 470 (*Nasha*).

[8]  In *Birchfield v. North Dakota* (2016) __ U.S. __ [136 S.Ct. 2160], the United States Supreme Court considered the constitutionality of state statutes making a refusal to undergo a blood alcohol test a *criminal* offense. In considering that issue, the *Birchfield* court noted that its "prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply . . . and nothing we say here should be read to cast doubt on them." (*Id*. at p. 2185.)

11

under influence], or 23153 [driving under the influence and causing bodily injury]."

Section 23612, subdivision (a)(1)(D) provides that the person arrested for driving under the influence "shall be told that his or her failure to submit to, or the failure to complete, the required chemical testing" will result in a fine, mandatory imprisonment upon conviction of driving under the influence, and suspension or revocation of the person's driver's license.[9]

If an individual refuses to submit to such testing, section 13353 provides for suspension or revocation of the person's driver's license.[10] However, if police do not

---

[9]     Section 23612, subdivision (a)(1)(D) provides:  "The person shall be told that his or her failure to submit to, or the failure to complete, the required chemical testing will result in a fine, mandatory imprisonment if the person is convicted of a violation of Section 23152 or 23153, and (i) the suspension of the person's privilege to operate a motor vehicle for a period of one year, (ii) the revocation of the person's privilege to operate a motor vehicle for a period of two years if the refusal occurs within 10 years of a separate violation of Section 23103 as specified in Section 23103.5, or of Section 23140, 23152, or 23153 of this code, or of Section 191.5 or subdivision (a) of Section 192.5 of the Penal Code that resulted in a conviction, or if the person's privilege to operate a motor vehicle has been suspended or revoked pursuant to Section 13353, 13353.1, or 13353.2 for an offense that occurred on a separate occasion, or (iii) the revocation of the person's privilege to operate a motor vehicle for a period of three years if the refusal occurs within 10 years of two or more separate violations of Section 23103 as specified in Section 23103.5, or of Section 23140, 23152, or 23153 of this code, or of Section 191.5 or subdivision (a) of Section 192.5 of the Penal Code, or any combination thereof, that resulted in convictions, or if the person's privilege to operate a motor vehicle has been suspended or revoked two or more times pursuant to Section 13353, 13353.1, or 13353.2 for offenses that occurred on separate occasions, or if there is any combination of those convictions, administrative suspensions, or revocations."

[10]     Section 13353, subdivision (a) provides:  "If a person refuses the officer's request to submit to, or fails to complete, a chemical test or tests pursuant to Section 23612, upon receipt of the officer's sworn statement that the officer had reasonable cause to believe the person had been driving a motor vehicle in violation of Section 23140 , 23152, or 23153,

12

properly advise the person that his or her driving privilege will be suspended or revoked if the individual refuses to submit to blood alcohol testing, then the DMV cannot suspend or revoke the person's license despite the refusal. (§ 13557, subd. (b)(1)(D); *Daly v. Department of Motor Vehicles* (1986) 187 Cal.App.3d 257, 261 ["Proper warning of the consequence of refusal is an element essential to the suspension of a driver's license."].)

If the person arrested for driving under the influence refuses to submit to blood alcohol testing, the police will give the person notice of the administrative suspension, a 30-day temporary permit to drive, and notice of the right to request an administrative hearing. (§§ 13353, 23612, subd. (a).)

In such a case, the arresting officer completes a document entitled, "Officer's Statement," which is intended to contain the facts necessary for DMV to suspend the license. (§ 13353, subd. (a)(3)(C).) Upon receipt of this paperwork containing the requisite information, the DMV will suspend or revoke the person's license. (§ 13353, subd. (d).)

A person who has received a notice of an order of suspension of revocation may request a hearing before the DMV. (§ 13558, subd. (a).) In a case involving the refusal to submit to a blood alcohol test, the issues to be considered at the hearing are whether

and that the person had refused to submit to, or did not complete, the test or tests after being requested by the officer, the department shall do one of the following: [¶] (1) Suspend the person's privilege to operate a motor vehicle for a period of one year."

This statute further provides that for a person who has received one or two prior driving under the influence convictions within 10 years, revocations of two and three years are mandated. (See § 13553, subd. (a)(2) & (a)(3).) In this case, as noted *ante*, Hall has two such convictions within 10 years.

13

(1) the officer had reasonable cause to believe the individual was driving a vehicle in violation of section 23152 or 23153; (2) the person was lawfully arrested; (3) the arrestee was properly advised of the consequences of refusing to submit to or complete a blood alcohol test; and (4) the person refused to submit to, or failed to complete, the blood alcohol test.  (§ 13557, subd. (b)(1).)

The administrative hearing is held before a DMV hearing officer.  (§ 14104.2.)  If the hearing officer finds each issue is established by a preponderance of the evidence, the person's driver's license will be suspended or revoked.  (§ 13557, subd. (b)(1).)

"A determination by the DMV to suspend [or revoke] an individual's driver's license is subject to judicial review in the trial court by means of a petition for writ of mandate."  (*Bussard v. Department of Motor Vehicles* (2008) 164 Cal.App.4th 858, 862.) More specifically, section 13559 provides in part:

> "(a)  [W]ithin 30 days of the issuance of the notice of determination of the department sustaining an order of suspension or revocation of the person's privilege to operate a motor vehicle . . .  the person may file a petition for review of the order in the court of competent jurisdiction in the person's county of residence.  The filing of a petition for judicial review shall not stay the order of suspension or revocation.  The review shall be on the record of the hearing and the court shall not consider other evidence.  If the court finds that the department exceeded its constitutional or statutory authority, made an erroneous interpretation of the law, acted in an arbitrary and capricious manner, or made a determination which is not supported by the evidence in the record, the court may order the department to rescind the order of suspension or revocation and return, or reissue a new license to, the person."

## II. *APPEALABILITY ISSUES*

### A. *The Order Is a Nonappealable Remand Order*

A trial court's order denying a petition for a writ of mandate is an appealable order where there are no remaining causes of action between the parties. (*MCM Construction, Inc. v. City and County of San Francisco* (1998) 66 Cal.App.4th 359, 367, fn. 3; *Bollengier v. Doctors Medical Center* (1990) 222 Cal.App.3d 1115, 1122.) Conversely, "[a] remand order to an administrative body is not appealable." (*Village Trailer Park, supra,* 101 Cal.App.4th at pp. 1139-1140.)

At the outset, Hall and the DMV disagree whether the court's order here is appealable. The Attorney General contends the order is a nonappealable remand order. Hall contends the superior court "denied" the amended petition, the court's remand order is "ultra vires," and therefore the order is appealable as a final order denying a petition for writ of mandate.

To resolve this issue, we must interpret the court's order. "The substance and effect of the order, not its label or form, determines whether it is appealable." (*Joyce v. Black* (1990) 217 Cal.App.3d 318, 321.) "If a judgment is ambiguous, we may examine the entire record to determine its scope and effect, including the pleadings." (*Rancho Pauma Mutual Water Co. v. Yuima Municipal Water Dist.* (2015) 239 Cal.App.4th 109, 115.)

Considering the order as a whole, the court's overarching ruling is that Hall is entitled to a new DMV hearing on due process grounds. In two places, the court stated it was deeply troubled by Benavidez's "criminal conduct while acting as a hearing officer

15

for the DMV" which "raise[d] a red flag with respect to all hearings presided by her." The court determined there was no evidence Benavidez was actually biased in Hall's case, stating there is "no indication on the facts and the evidence presented that Hall was denied due process." Nevertheless, the court stated she "agrees with [Hall] that he has a right to be heard by an impartial decision maker" and therefore ordered a new hearing.

The court cited two cases as authority for its remand for a new DMV hearing—*Nissan Motor Corp., supra,* 153 Cal.App.3d 109 and *Nasha*, *supra*, 125 Cal.App.4th 470. Examining these cases is therefore helpful in discerning the court's intent.

In *Nissan Motor Corp.*, the court held that a hearing conducted by the New Motor Vehicle Board violated due process rights to a fair and impartial hearing because four of the nine board members were new car dealers, and none were car manufacturers. Stating "the tribunal is clearly biased and slanted towards the car dealers" (*Nissan Motor Corp., supra,* 153 Cal.App.3d at p. 113), the court remanded for a new hearing "without the participation of the new motor vehicle dealer members." (*Id.* at p. 116.)

In *Nasha*, while a residential development project was pending before the city's planning commission, one of its members authored an article attacking the project. (*Nasha, supra,* 125 Cal.App.4th at p. 473.) The appellate court first held that a superior court may consider evidence not presented at the administrative hearing relating to a claim the petitioner was deprived of due process. (*Id.* at p. 485.) Next, finding an "unacceptable probability of actual bias" (*id.* at p. 483), the appellate court directed the superior court to issue a writ vacating the planning commission's decision and directing it to conduct a new hearing before an impartial panel. (*Id.* at p. 486.)

16

In light of the foregoing, we construe the order as granting Hall's amended petition on due process grounds, directing the DMV to conduct a new hearing with an impartial hearing officer, and denying the amended petition in all other respects. This reconciles the court's statement that it "denies the writ" with the rest of the order. As such, the order is nonappealable. (*Gillis, supra,* 206 Cal.App.4th at p. 318.)[11]

B. *The Remand Order Is Not Ultra Vires*

In interpreting the court's decision, we reject Hall's assertion that the court had no authority to order a remand or, to use Hall's words, that the remand is "ultra vires." Hall's ultra vires argument is based on section 13559, which provides for judicial review of an adverse DMV hearing determination.

Under section 13559, review is limited to the record of the administrative hearing, and the trial court may not consider any other evidence. (§ 13559, subd. (a).) Additionally, section 13559, subdivision (a) also provides, "If the court finds that the department exceeded its constitutional or statutory authority . . . , the court may order the department to rescind the order of suspension or revocation and return, or reissue a new license to, the person." Focusing on this last sentence in section 13559, Hall argues the *exclusive* remedy in a proceeding brought under section 13359 is license reinstatement, and the court cannot instead order a new hearing.

---

[11]    Having construed the order as one granting a writ directing the DMV to conduct a new hearing, we reject Hall's argument the court had no authority to order the DMV to do anything except by issuing a writ.

17

Hall's argument fails because his amended petition was not based solely on section 13359. The due process argument in Hall's amended petition was based on outside-the-record evidence Benavidez pleaded guilty to bribery. Under section 13559, subdivision (a), the court would have been precluded from considering that evidence. As noted *ante*, that statute provides, "The review shall be on the record of the hearing and the court shall not consider other evidence." (§ 13559, subd. (a).)

To avoid this limitation and to get Benavidez's guilty plea before the court, in his amended petition Hall invoked Code of Civil Procedure section 1094.5, governing writs of administrative mandate. The caption of Hall's amended petition cites not only section 13559, but also Code of Civil Procedure section 1094.5. Code of Civil Procedure section 1094.5, subdivision (e), which the court treated as applicable here, provides in relevant part: "Where the court finds that there is relevant evidence that, in the exercise of reasonable diligence, could not have been produced . . . at the hearing before respondent, it may enter judgment as provided in subdivision (f) remanding the case to be reconsidered in the light of that evidence."

Thus, contrary to Hall's contention, ordering a new hearing is not "ultra vires." Considering outside-the-record evidence of Benavidez's guilty plea, and remanding to the DMV for a new hearing, was authorized under Code of Civil Procedure section 1094.5, a statute Hall invoked, and upon which the court relied.

C. *We Treat Hall's Attempted Appeal as a Writ Petition*

"A reviewing court has jurisdiction over a direct appeal only when there is (1) an appealable order or (2) an appealable judgment." (*Griset v. Fair Political Practices Com.*

18

(2001) 25 Cal.4th 688, 696.)  Although Hall has attempted to appeal from a nonappealable remand order, the Attorney General urges us to "accept review of the trial court's order of remand as a petition for writ of mandate."  Hall, who did not file a reply brief, has not responded to this argument.

In *Olson v. Cory* (1983) 35 Cal.3d 390 (*Olson*) at pages 400-401, the California Supreme Court held it was appropriate to treat an appeal from a nonappealable order as a petition for an extraordinary writ when (1) requiring the parties to wait for a final judgment might lead to unnecessary trial proceedings; (2) the briefs and record included, in substance, the necessary elements for a proceeding for a writ of mandate; (3) there was no indication the trial court would appear as a party in a writ proceeding; (4) the appealability of the order was not clear; and (5) the parties urged the court to decide the issues rather than dismiss the appeal.  The Supreme Court cautioned, however, that the power to treat an appeal from a nonappealable order as a petition for a writ of mandate should not be exercised except under unusual circumstances.  (*Id.* at p. 401.)  In *Katzenstein v. Chabad of Poway* (2015) 237 Cal.App.4th 759, 770, footnote 16, this court stated an attempted appeal from a nonappealable order should be treated as a writ petition only in "'extraordinary circumstances.'"

Extraordinary circumstances warrant treating Hall's attempted appeal as a writ petition.  In *Olson*, "that the issue of appealability was far from clear in advance" was an unusual circumstance justifying the Supreme Court's decision to treat the purported appeal as a petition for a writ of mandate.  (*Olson, supra,* 35 Cal.3d at p. 401.)  Here too, through no fault of the parties, the appealability of the court's order was not clear.  The

19

court stated it found no evidence of a due process violation, but later agreed with Hall his due process rights were violated, requiring a new hearing before an impartial hearing officer. The court at one point states it "denies the writ" (indicating an appealable order), but then remands for a new hearing. It would be manifestly unfair under these circumstances to preclude Hall from obtaining appellate review because he filed a notice of appeal rather than a writ petition in this court.

Moreover, most of the other *Olson* factors are also present here: The issues have been fully briefed, the existing record includes in substance the elements necessary for a proceeding for a writ of mandate in this court; there is no indication the trial court would be more than a nominal party to the writ proceeding; the DMV urges a decision on the merits; and Hall has not opposed that request. Accordingly, we treat Hall's purported appeal as a petition for a writ of mandate. (*Board of Dental Examiners v. Superior Court* (1998) 66 Cal.App.4th 1424, 1430-1431 [remand order was not appealable but appellate court exercised its discretion to treat appeal as a petition for writ of mandate].)

### III. *THE COURT CORRECTLY DETERMINED THAT HALL IS ENTITLED TO A NEW HEARING*

A. *The Standard of Review*

"A challenge to the procedural fairness of the administrative hearing is reviewed de novo on appeal because the ultimate determination of procedural fairness amounts to a question of law." (*Nasha, supra,* 125 Cal.App.4th at p. 482.) This due process issue is properly before us because Hall challenges the order remanding for a new hearing, which necessarily encompasses whether his due process right to a fair hearing was violated by

20

having a hearing officer who took bribes in other cases. (See *Securitas Security Services USA, Inc. v. Superior Court* (2015) 234 Cal.App.4th 1109, 1124 & fn. 7.)

B. *Intolerably High Risk of Actual Bias Standard*

"When, as here, an administrative agency conducts adjudicative proceedings, the constitutional guarantee of due process of law requires a fair tribunal." (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 215 (*Today's Fresh Start*).) "A fair tribunal is one in which the . . . decision maker is free of bias for or against a party." (*Ibid.*)

"Of all the types of bias that can affect adjudication, pecuniary interest has long received the most unequivocal condemnation and the least forgiving scrutiny." (*Haas v. County of San Bernardino* (2002) 27 Cal.4th 1017, 1025.) Thus, even though due process allows more flexibility in administrative process than judicial process, "the rule disqualifying adjudicators with pecuniary interests applies with full force" in administrative proceedings. (*Id.* at p. 1027.) Moreover, although adjudicators challenged for reasons other than financial interest have been afforded a presumption of impartiality, "adjudicators challenged for financial interest have not. Indeed, the law is emphatically to the contrary." (*Id.* at p. 1025.)

Accordingly, "where the basis for a challenge is an alleged pecuniary interest, the presumption of impartiality that would otherwise apply has no place." (*Today's Fresh Start, supra,* 57 Cal.4th at p. 216.) Rather, "due process is violated whenever a decision maker has a financial interest that 'would offer a possible temptation to the average person as judge not to hold the balance nice, clear and true.'" (*Ibid.*) "Conclusive proof

21

of actual bias is not required; an objective, intolerably high risk of actual bias will suffice." (*Ibid*.)

C. *Hall Is Entitled to a New Hearing*

A litigant is entitled to have confidence that the hearing officer before whom he or she appears is not accepting bribes in other cases. A corrupt decision maker who wants to retain office will try to hide bribe-taking. An obvious way to do that is to favor the government in cases where no bribe is tendered. This form of bias, called "compensatory" bias, occurs when a decision maker, who is taking bribes in some cases, is biased against those who do not bribe the decision maker, so he or she avoids being perceived as uniformly and suspiciously soft on the party opposing the government. (See *Bracy v. Gramley* (1997) 520 U.S. 899, 905 [defining compensatory bias].)

Absent a confession from Benavidez about this particular case, which is not in this record, there is no way of knowing for certain whether she was biased in deciding Hall's case. However, the constitutional standard of impartiality is framed in terms of probabilities, not certainties. (*Woody's Group, Inc. v. City of Newport Beach* (2015) 233 Cal.App.4th 1012, 1021.) The law does not require someone in Hall's position to prove actual bias. Rather, "an objective, intolerably high risk of actual bias will suffice." (*Today's Fresh Start, supra,* 57 Cal.4th at p. 216.)

We know from Benavidez's guilty plea that she accepted bribes *for nearly a decade* and was paid thousands of dollars in cash and took additional bribes in property. Benavidez did not have a momentary ethical lapse or an isolated act of poor judgment. She took bribes over a time period that for some people is an entire career.

22

The disdain her conviction shows for the duties of her office eliminates any presumption that she was a fair and impartial decision maker when not taking bribes. Benavidez's repudiation of her obligation to impartially decide cases evidences an intolerably high risk of bias in Hall's case and entitles him to a new hearing before a fair and impartial hearing officer. The proper remedy for the denial of a fair administrative hearing is to remand the matter for a new administrative hearing before a different, qualified hearing officer. (See *Sinaiko v. Superior Court* (2004) 122 Cal.App.4th 1133, 1145 ["where the administrative agency fails to provide a fair hearing . . . the court should remand to the administrative agency to consider the evidence and to exercise its discretion following a full and fair hearing on the merits"].)

D. *The Attorney General's Arguments Are Unavailing*

The Attorney General contends Hall's due process claim fails because "[e]ven the trial court determined Hall did not present information or evidence showing he was denied due process or that Benavidez' decision was unsupported by the record." This argument fails for two reasons. First, to establish a due process violation, Hall was not required to show Benavidez was actually biased in his case. (*Today's Fresh Start, supra,* 57 Cal.4th at p. 216.) Second, even assuming, without deciding, that Benavidez's evidentiary rulings and decision are justifiable as within the bounds of discretion, this does not demonstrate a lack of bias. A corrupt decision maker may give plausible reasons for rulings, and yet make the decision for dishonest reasons. By their very nature, discretionary rulings are not a reliable indication of bias. The concept of discretion assumes there is more than one reasonably defensible resolution of the

23

particular issue. When bias is present in a corrupt hearing officer's discretionary decisions, it will rarely be visible in the decision maker's rulings. Indeed, a corrupt hearing officer with Benavidez's experience would be expected to mask bias by not making indefensible rulings.

The Attorney General also asserts Hall's claim of bias is not "logical" because Benavidez pleaded guilty to accepting bribes to rule against the DMV—and here, she ruled in the DMV's favor. The Attorney General contends, "[t]here is no indication she has ever . . . exhibited any bias in favor of the DMV." This argument fails because it ignores the probability of compensatory bias. Benavidez's willingness to take bribes for nearly a decade reasonably calls into question her ability to be fair in any case she decided in that time period.

## IV. *HAVING REMANDED FOR A NEW HEARING, THE COURT SHOULD NOT HAVE ADDRESSED THE MERITS*

In addition to deciding Hall is entitled to a new hearing, the superior court also addressed the merits, determining "there is sufficient admissible evidence . . . to sustain the finding that [the police] properly admonished Hall as required by law."

In light of the order remanding for a new hearing, the court should not have reached this issue. There is no value in affirming a finding based on an administrative record generated in a hearing that violated due process. Moreover, remanding for a new hearing to determine if police properly admonished Hall would be pointless if the superior court already decided that issue.

For the same reasons, it is also inappropriate for this court to address the parties' arguments on whether there is sufficient admissible evidence to establish Hall's license was properly revoked, and therefore we decline to do so.  Whether the DMV properly revoked Hall's license must be decided anew, in the first instance, by a fair and impartial hearing officer, without regard to the superior court's discussion, findings, or ruling on that issue in this case.

## DISPOSITION

Let a writ issue directing the superior court to vacate its "Decision On Petition for Writ of Mandate" and to issue a writ of mandate directing the DMV to vacate its decision in Hall's case and to conduct a new hearing before a fair and impartial hearing officer.

Costs are awarded to Branden Lee Hall.


NARES, J.

WE CONCUR:


HUFFMAN, Acting P. J.


HALLER, J.

25