Filed 7/20/18; Certified for Publication 8/15/18 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| BRANDEN LEE HALL,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>DEPARTMENT OF MOTOR VEHICLES,<br><br>    Defendant and Respondent. | D072278<br><br><br>(Super. Ct. No. 37-2014-00023355-<br> CU-WM-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Tamila E. Ipema, Judge.  Affirmed.

Law Office of A. P. Zmurkiewicz and A. P. Zmurkiewicz for Plaintiff and Appellant.

Xavier Becerra, Attorney General, Chris A. Knudsen, Assistant Attorney General, Christine Mersten and Alice Q. Robertson, Deputy Attorneys General, for Defendant and Respondent.

Branden Lee Hall appeals from an order denying his motion for attorney fees he incurred in litigation culminating in *Hall v. Superior Court* (2016) 3 Cal.App.5th 792

(*Hall I*).  The superior court determined that Hall was not a successful party because *Hall I* did not provide him with any relief that was not already granted to him by the trial court and available from the Department of Motor Vehicles (DMV).  We agree with the superior court's ruling and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A.  *Hall's Arrest*

In March 2014, after the car Hall was driving rear-ended another car stopped at a red traffic signal, police arrested Hall for driving under the influence.  (*Hall I*, *supra*, 3 Cal.App.5th at p. 797.)  One of Hall's minor children, a passenger in the back seat of his car, told police that Hall had been drinking and that several people tried to stop Hall from driving because he "drank too much."  (*Id.* at p. 798.)  The arresting officer noticed a strong odor of alcohol on Hall's breath and that Hall's eyes were bloodshot and he was slurring his speech.  (*Ibid*.)  After his arrest, Hall refused to submit to a chemical test for blood alcohol.  After obtaining a warrant, police obtained a blood sample from him anyway.  (*Ibid*.)  The officer's statement indicates that Hall's blood alcohol level was 0.08 percent or more.

B.  *License Suspension Hearing*

Because Hall refused to submit to a blood alcohol test, police seized his driver's license, notified him that his license would be suspended or revoked by the DMV in 30 days, and advised him of his right to request a DMV hearing to show that the suspension or revocation was not justified.  (*Hall I*, *supra*, 3 Cal.App.5th at p. 798.)  Hall requested a hearing, which was conducted by Alva Garrido Benavidez, a DMV-appointed hearing

2

officer. (*Ibid.*) At the hearing, the DMV offered documentary evidence including an "Officer's Statement" indicating that police arrested Hall on "3-22-14"; however, the reverse side of the form, containing the admonishment police gave to Hall about the consequences of his failure to submit to a blood alcohol test, is dated "9-27-14." (*Id.* at p. 799.) Hall's attorney objected to this document, asserting the date discrepancy "renders the document not an official record" under Evidence Code section 1280. (*Hall I,* at p. 799.) However, Benavidez overruled these objections, ruling that the date discrepancy was a clerical error, and she sustained the revocation of Hall's driver's license. (*Ibid.*)

C. *Writ Petition*

In July 2015 Hall filed a petition for a writ of mandate in the superior court. Hall argued that the date discrepancy was not a clerical error, rendering the document inadmissible.[1] The court set a hearing date on the writ petition.

D. *Amended Petition*

Before the hearing on Hall's writ petition, Benavidez was charged with conspiring with certain attorneys to accept bribes in exchange for unlawfully issuing temporary driver's licenses to persons charged with driving under the influence. (*Hall I*, *supra*, 3 Cal.App.5th at pp. 799-800.) In light of these charges, the superior court granted Hall leave to amend his writ petition.

---

[1]    Without evidence that police properly admonished Hall about the consequences of his refusal to submit to a blood alcohol test, the DMV could not have properly suspended or revoked Hall's license. (*Hall I*, *supra*, 3 Cal.App.5th at p. 803.)

3

After Benavidez pleaded guilty, Hall filed an amended writ petition, which in addition to the original date discrepancy allegation, also alleged that the DMV violated his due process right to a fair hearing because Benavidez took bribes in other cases. (*Hall I*, *supra*, 3 Cal.App.5th at p. 800.)  Although there was no evidence that Benavidez had asked for a bribe in Hall's case, Hall's attorney insisted that the lack of an impartial hearing officer constituted a constitutional violation that required the DMV to reinstate Hall's driver's license.  (*Ibid*.)

After conducting a hearing, the court granted Hall's amended petition on due process grounds, but denied Hall the relief he requested.  Instead, the court remanded the matter to the DMV to conduct a new hearing with an impartial hearing officer.  (*Hall I*, *supra*, 3 Cal.App.5th at p. 806.)

The DMV advised Hall that he had "been granted a denovo [*sic*] hearing" at a "mutually agreeable" date and time.  Later that month, the DMV attempted to contact Hall's attorney to schedule a hearing; however, he did not return calls.  The DMV set Hall's new hearing for July 31, 2015; however, on July 20 Hall filed a notice of appeal from the superior court's order and the DMV cancelled the hearing.

E.  *Hall I*

Unsatisfied with a de novo DMV hearing, Hall appealed, asserting the court should instead have ordered the DMV to reinstate his driver's license.  (*Hall I*, *supra*, 3 Cal.App.5th at p. 797.)  In *Hall I* we agreed with Hall that a hearing officer "who admits to taking bribes for nearly a decade does not meet the constitutional standard of impartiality."  (*Ibid*.)  However, we rejected Hall's argument that this due process

4

violation required the DMV to reinstate his license, and instead held that the court "correctly ordered a new administrative hearing." (*Id.* at p. 797.)  We did not address whether the date discrepancy on the admonishment form required the DMV to reinstate Hall's license because that issue was to be decided in the first instance by the hearing officer.  (*Id.* at p. 811.)  We awarded costs to Hall, but did not state we were doing so because he was the "prevailing party."[2]  (*Ibid.*)

F.  *Attorney Fee Motion*

After *Hall I* became final, Hall's attorney filed a motion in the superior court seeking $145,044 in attorney fees under Code of Civil Procedure[3] section 1021.5.  This consisted of a lodestar of $72,522 based on 183.6 hours at $395 per hour, which Hall asserted should be doubled.  Alternatively, Hall sought the maximum under Government Code section 800.[4]  His principal argument was that *Hall I* enforced an important right

---

[2]    Asserting that he was the prevailing party on appeal, Hall's opening brief states, "The superior court ruled that there was no due process violation . . . but that decision was reversed by the Court of Appeal . . . ."  Hall makes similar assertions in his reply. Hall is incorrect.  In *Hall I*, *supra,* 3 Cap.App.5th at page 305, we stated, "Considering the [trial court's] order as a whole, the overarching ruling is that Hall is entitled to a new DMV hearing on due process grounds"—a ruling we *affirmed*, not reversed.  (*Id.* at p. 806.)

[3]    Undesignated statutory references are to the Code of Civil Procedure.

[4]    Government Code section 800 provides in part:  "(a)  In any civil action to appeal or review the . . . determination of any administrative proceeding . . . if it is shown that the . . . determination of the proceeding was the result of arbitrary or capricious action or conduct by a public entity or an officer thereof . . . the complainant if he or she prevails in the civil action may collect . . . attorney's fees . . . but not to exceed seven thousand five hundred dollars ($7,500)."

5

affecting the public interest, entitling him to attorney fees under the private attorney general doctrine, codified in section 1021.5. Opposing the motion, the DMV asserted that Hall was not successful in the litigation because the DMV offered to provide him with a new hearing—Hall was the one who rejected that relief and lost on that point in *Hall I*.

After conducting a hearing, the court denied Hall's attorney fee motion. The court determined Hall was not successful because "the remedy that [the] trial court imposed was proper and affirmed on appeal[,] while Hall's argument on the proper remedy, i.e. suspension revoked, was rejected." The court noted that Hall was "trying . . . to portray his case as one imposing a significant benefit to the general public, even though he was unsatisfied with the remand remedy from the very start." The court also determined that Hall's litigation did not result in any public benefit regarding the admissibility of documents in a DMV hearing because *Hall I* declined to decide that issue.

DISCUSSION

I. *THE COURT CORRECTLY DENIED HALL'S ATTORNEY FEE MOTION*

A. *Section 1021.5*

Generally, parties in litigation pay their own attorney fees. (*Gray v. Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 504.) Section 1021.5 is an exception to that rule. This statute codifies the private attorney general doctrine and acts as an incentive to pursue ""public-interest litigation that might otherwise have been too costly to bring.""" (*Save Our Heritage Organisation v. City of San Diego* (2017) 11 Cal.App.5th 154, 159 (*Save Our Heritage*).)

6

Section 1021.5 provides in part:  "[A] court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if:  (a) a significant benefit . . . has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

Thus, to obtain fees under section 1021.5, the moving party must establish all of the following:  (1) he or she is a "successful party," (2) the action has resulted in the enforcement of an important right affecting the public interest, (3) the action has conferred a significant benefit on the public or a large class of persons, and (4) an attorney fees award is appropriate in light of the necessity and financial burden of private enforcement.  (*Sagaser v. McCarthy* (1986) 176 Cal.App.3d 288, 313.)

B.  *The Standard of Review*

Generally, we review the trial court's determination of whether the requirements under section 1021.5 have been satisfied for abuse of discretion.  (*Espejo v. Copley Press, Inc.* (2017) 13 Cal.App.5th 329, 378.)

C.  *Analysis Under Section 1021.5*

Asserting the court erred in denying attorney fees under section 1021.5, Hall contends that important due process rights were vindicated by *Hall I*, *supra*, 3 Cal.App.5th 792.  However, before considering the nature of the rights vindicated, to

7

qualify for fees under section 1021.5, Hall must first establish he is a "successful party." (*Urbaniak v. Newton* (1993) 19 Cal.App.4th 1837, 1842 (*Urbaniak*).)

"'The term "successful party," as ordinarily understood, means the party to the litigation that achieves its objectives.'" (*Save Our Heritage*, *supra*, 11 Cal.App.5th at p. 160.) Under this test, as explained by this court in *Leiserson v. City of San Diego* (1988) 202 Cal.App.3d 725 (*Leiserson*), Hall was not the successful party.[5]

In *Leiserson*, *supra*, 202 Cal.App.3d 725, a news photographer was arrested after filming an airline crash site that was under police investigation. He sued the city for violating his civil rights although his primary goal in the litigation was to advance his own economic interests by obtaining a damage award. (*Id*. at p. 738.) The *Leiserson* court determined that the plaintiff had been properly excluded from a disaster scene, but the case resulted in a published opinion that defined the rights of the press to be present at such scenes. (*Ibid*.) After our opinion became final, Leiserson sought attorney fees under section 1021.5, contending his action had resulted in enforcing an important right affecting the public interest and conferring significant benefits on the general public and news media by vindicating the media's right to disseminate information. (*Leiserson,* at p. 731.)

This court held as a matter of law that Leiserson was not a "successful" litigant within the meaning of section 1021.5. (*Leiserson, supra,* 202 Cal.App.3d at pp. 733, 736.) The court acknowledged that the published opinion defined certain media rights,

5     Although the DMV cites *Leiserson*, *supra*, 202 Cal.App.3d 725 in its brief, Hall does not cite or discuss *Leiserson* in his reply.

but it did not warrant private attorney general fees "considering the precise nature of the tort litigation Leiserson elected to pursue and his failure to prevail in any manner within his chosen context." (*Id.* at p. 738.) The court explained: "Although the procedural device by which a plaintiff seeks to enforce an important right does not always determine entitlement to attorney's fees under section 1021.5 [citations], the relief sought is probative of such entitlement. Indeed, where only a litigant's personal economic interests are advanced by a lawsuit, fees may not be awarded since the litigation does not significantly benefit a large class of persons." (*Ibid.*) The court noted that Leiserson "confined his tort action prayer to civil damages for himself, never requesting a declaration of the access rights of the press at disaster sites . . . . By tactical design, the litigation was not intended to promote the rights of the media by obtaining a judicial declaration of those rights. Rather, a review of Leiserson's damages complaint reveals his primary intent for pursuing the litigation was to advance his own personal economic interest." (*Ibid.*) This court stated that given the focus of Leiserson's case, the ensuing published opinion was "simply fortuitous." (*Ibid.*)

In sum, the plaintiff in *Leiserson*, *supra*, 202 Cal.App.3d 725 was not "successful" within the meaning of section 1021.5 because he had not achieved his primary litigation goal—a damage award, not a vindication of media rights. (*Leiserson,* at p. 738.) The litigation achieved only incidental public benefits.

*Leiserson*, *supra*, 202 Cal.App.3d 725 compels the same result here. Hall's primary litigation goal—in fact, his only litigation goal—was reinstatement of his driver's license. This was the only relief he pleaded in his original petition for writ of mandate,

9

and after Benavidez's bribery came to light, Hall repeated that prayer for relief, *verbatim*, in his amended petition.

Unsatisfied with the trial court's ruling giving him a new hearing with an impartial hearing officer, Hall insisted on appeal that this court must reinstate his driver's license. (*Hall I*, *supra*, 3 Cal.App.5th at pp. 806-807.) He characterized the superior court's remand order as being "ultra vires." (*Id.* at p. 807.) We rejected that argument. (*Ibid.*)

Under California law, a plaintiff may be deemed to have been successful under section 1021.5 by succeeding on any significant issue in the litigation which achieves some of the benefit plaintiff sought in bringing suit. (*Center for Biological Diversity v. California Fish & Game Com.* (2011) 195 Cal.App.4th 128, 138 (*Center for Biological Diversity*).) However, the only relief, achievement, or success for Hall from this litigation was a remand to the DMV to conduct another hearing. This was not a significant issue; indeed, it was no issue at all because Hall's strategic objective was to obtain a court order that he prevail as a matter of law by overturning the DMV's decision to revoke his license. He did not achieve his only litigation objective. All Hall achieved was a do-over, something he did not seek, does not want, and in fact, when offered by both the trial court and later the DMV, a remedy he rejected.[6]

---

6      The record does not reflect the result of Hall's new DMV hearing. For that reason, the DMV's reliance on *Center for Biological Diversity*, *supra*, 195 Cal.App.4th 128 and *Karuk Tribe of Northern California v. California Regional Water Quality Control Bd., North Coast Region* (2010) 183 Cal.App.4th 330 for the proposition that Hall was not successful in the litigation is misplaced. In each of those cases, the agency reconsidered the matter on remand and reiterated its earlier decision.

Another test established in case law for determining whether a party was successful under section 1021.5 is the before-and-after test. Under this test, courts consider the situation immediately prior to the commencement of the suit and the situation after. (*People v. Investco Management & Development LLC* (2018) 22 Cal.App.5th 443, 458.) Before, Hall's license was suspended for refusing to take a blood alcohol test. After the litigation, Hall's license was suspended for refusing to take a blood alcohol test. The only relief—using the term in the broadest sense—that Hall achieved was a remand to the DMV.

Disagreeing with this conclusion, Hall characterizes the litigation as vindicating the public's right to due process and a fair DMV hearing officer. Hall's attempt to recast the purpose, scope, and outcome of the litigation is not persuasive. Although the subject of impartial decision makers and due process undoubtedly is an important right affecting the public interest, in no sense did Hall cause it to be enforced because when offered the very remedy the trial court ordered and this court affirmed in *Hall I*, *supra*, 3 Cal.App.5th 792, he refused it.

Hall also contends he was successful within the meaning of section 1021.5 because in *Hall I*, *supra*, 3 Cal.App.5th at page 811, this court awarded him costs, which he construes as a judicial determination that he was the "prevailing party." However, under California Rules of Court,[7] rule 8.493(a)(2), an opinion resolving an original proceeding in the Court of Appeal must specify the award or denial of costs. Such costs

---

[7]     Citations to rules are to the California Rules of Court.

may, but are not required to, be awarded to the prevailing party. Rather, under rule 8.493(a)(1)(B), the court may award costs "[i]n the interests of justice." Given the result in *Hall I*—i.e., we rejected Hall's argument that his license must be reinstated—the only reasonable inference is we awarded Hall costs in the interests of justice because the DMV had not afforded him an impartial hearing officer.

Hall additionally contends that the publication of *Hall I*, *supra*, 3 Cal.App.5th 792 is "strong evidence" that an important right is involved, entitling him to an attorney fee award under section 1021.5. However, whether an important right is involved is distinct from whether Hall is or is not a "successful party." To obtain fees under section 1021.5, Hall must *first* establish he is a "successful party." (*Urbaniak*, *supra*, 19 Cal.App.4th at p. 1842; *Leiserson*, *supra*, 202 Cal.App.3d at p. 738 [despite published opinion on constitutional rights, plaintiff not successful under section 1021.5 where he failed to achieve his litigation goal].)

Moreover, even assuming for the sake of argument that Hall was "successful" within the meaning of section 1021.5, we would still affirm the trial court's ruling because Hall cannot satisfy another essential requirement—that an attorney fee award is appropriate in light of the necessity and financial burden of private enforcement.

"The private attorney general theory recognizes citizens frequently have common interests of significant societal importance, but which do not involve any individual's financial interests to the extent necessary to encourage private litigation to enforce the right. [Citation.] To encourage such suits, attorney's fees are awarded when a significant public benefit is conferred through litigation pursued by one whose personal stake is

12

insufficient to otherwise encourage the action." (*Beach Colony II v. California Coastal Commission* (1985) 166 Cal.App.3d 106, 114.) Conversely, section 1021.5 was not designed to reward litigants motivated by their own personal interests who only coincidentally protect the public interest. (*Ibid.*)

Here, it is indisputable that Hall had a significant personal stake in seeking reinstatement of his driver's license—he filed his original writ petition seven months *before* even knowing that Benavidez was being investigated for taking bribes. During that period, when there was no issue involving a corrupt decision maker, Hall's attorney billed 32.3 hours ($12,758.50) in prosecuting the case.

Once Hall learned about the charges against Benavidez, he amended his writ petition to also allege that Benavidez's bribery in other cases deprived him of due process at his hearing. Hall's motive was always about his self-interest in getting his license reinstated. His reliance on the DMV's duty to provide an impartial hearing officer was not an issue he created. It fell in his lap, a fortuity of timing, and it was simply another alternative means to his desired end—license reinstatement—but never the goal itself. For litigating in the trial court this additional ground for relief, Hall's attorney billed an additional 32.4 hours—nearly the same amount of time spent litigating in the superior court before Hall's attorney even knew that Benavidez was charged with taking bribes.[8]

---

[8] Billing records Hall's attorney submitted show he has spent more time attempting to obtain an attorney fee award (69.7 hours) then he did litigating the *merits* of *Hall I* (45.5 hours). (See *Dorsey v. Superior Court* (2015) 241 Cal.App.4th 583, 599 ["'"The attorneys' fees in this case have not simply become a case of the tail wagging the dog; the attorneys' fees have become the dog."'"].)

Placing the litigation burden on Hall is eminently fair because he was willing to place it upon himself for seven months of litigation, incurring $12,758.50 in attorney fees.  Moreover, once the due process violation was remedied by the order granting Hall a de novo DMV hearing, this litigation proceeded solely to vindicate Hall's personal goal of having his license reinstated without undergoing a new hearing.  That unsuccessful effort, costing Hall an additional $19,434 in attorney fees (49.2 hours) does not warrant reimbursement at the public's expense.

Because Hall is not a successful party under section 1021.5 and, even if he were, his personal stake in the litigation precludes an award under section 1021.5, it is unnecessary to consider his remaining contentions that the court erred in denying his motion for attorney fees under section 1021.5.  (*Urbaniak*, *supra*, 19 Cal.App.4th at p. 1844.)

D.  *Government Code Section 800*

To obtain attorney fees under Government Code section 800, Hall must show, among other things, that he "prevail[ed]" in his civil action challenging the administrative proceeding.  (Gov. Code, § 800, subd. (a).)  For purposes of attorney fee statutes, the terms "prevailing party" and "successful party" are synonymous.  (*Tipton-Whittingham v. City of Los Angeles* (2004) 34 Cal.4th 604, 610.)  Accordingly, for the same reasons we affirm the order denying Hall's motion under section 1021.5, we also affirm the trial court's determination he did not "prevail" under Government Code section 800.

14

E. *Costs*

The court awarded Hall $1,662 in costs. In a footnote in his opening brief, under the topic heading "Judgment or Order from which the Appeal is Taken," Hall contends the court erroneously failed to award him $132.88 in additional costs he incurred after filing his cost memorandum.

An appellate brief must state each point under a separate heading. (Rule 8.204(a)(1)(B).) Because Hall's argument about $132.88 in costs is not distinctly set forth and developed under a separate heading, he has forfeited this issue. (See *People v. Crosswhite* (2002) 101 Cal.App.4th 494, 502, fn. 5 [argument is forfeited "by raising it only in a footnote under an argument heading which gives no notice of the contention"].)

Moreover, even if not forfeited, the argument is unavailing because (1) Hall concedes that these costs were not included in his memorandum of costs; and (2) to the extent Hall incurred the $132.88 in costs after his memorandum of costs was otherwise required to be filed, he has not shown that he sought (and was erroneously denied) an extension of time to file his cost memorandum under rule 3.1700(b)(3).[9]

---

[9] Rule 8.278(c)(1), governing costs on appeal, provides that a party claiming such costs must file a memorandum of costs in the superior court under rule 3.1700. Rule 3.1700(b)(3) provides in part: "The party claiming costs and the party contesting costs may agree to extend the time for serving and filing the cost memorandum and a motion to strike or tax costs. . . . In the absence of an agreement, the court may extend the times for serving and filing the cost memorandum . . . for a period not to exceed 30 days."

15

DISPOSITION

The order is affirmed.  Respondent to recover costs incurred on appeal.


NARES, Acting P. J.

WE CONCUR:


HALLER, J.


GUERRERO, J.

COURT OF APPEAL - STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE


BRANDEN LEE HALL,
Plaintiff and Appellant,
v.
DEPARTMENT OF MOTOR VEHICLES,
Defendant and Respondent.
**D072278**
**San Diego County No. 37-2014-00023355-CU-WM-CTL**


THE COURT:

The opinion in this case filed July 20, 2018, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to California Rules of Court, rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.


NARES, Acting P.J.


cc: All Parties