Filed 4/4/24

## CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ERIC BEAN KNUDSEN,<br><br>　　　Plaintiff and Appellant,<br><br>　　　　　v.<br><br>DEPARTMENT OF MOTOR VEHICLES et al.,<br><br>　　　Defendants and Respondents. | F085992<br><br>(Kern Super. Ct.<br>No. BCV-22-100422)<br><br>**OPINION** |

APPEAL from an order of the Superior Court of Kern County. Thomas S. Clark, Judge.

Middlebrook & Associates, Richard O. Middlebrook, and Gabrielle A. Burnett for Plaintiff and Appellant.

Rob Bonta, Attorney General, Chris A. Knudsen, Gary S. Balekjian, and Kaprisha L. Vallecillo, Deputy Attorneys General, for Defendants and Respondents.

-ooOoo-

This appeal involves the suspension of plaintiff and appellant Eric Bean Knudsen's ("Knudsen") driver's license from an administrative per se (APS) hearing. A hearing officer for respondent Department of Motor Vehicles ("DMV") concluded that Knudsen had driven his car with a blood-alcohol content (BAC) of 0.08 percent or greater. Knudsen challenged the hearing officer's decision through a writ of mandate in the Kern County Superior Court. The writ of mandate was denied, and the suspension sustained,

by the trial court. Here, Knudsen argues in part that his state and federal due process rights were violated because the hearing officer who conducted the APS hearing was not constitutionally impartial.

In part, *California DUI Lawyers Assn. v. DMV* (2022) 77 Cal.App.5th 517, 532–533 (*DUI Lawyers*) held that an administrative public hearing officer who acts as both an advocate and adjudicator violates a driver's due process right to an impartial adjudicator. However, the issue of how to resolve a driver's due process challenge to an APS hearing following *DUI Lawyers* has not been addressed by California courts. As we explain below, we conclude that to resolve such a challenge, it is first necessary to determine whether a particular driver's due process right to an impartial adjudicator was violated. Consistent with *DUI Lawyers*, that determination is made by assessing the administrative record and the revocation decision to see if the public hearing officer actually acted as both an adjudicator *and* an advocate, or merely acted as an adjudicator and a collector and developer of evidence. If the relevant documents demonstrate that the public hearing officer did not act as an advocate, then the driver's due process right to an impartial adjudicator was not violated, and the constitutional issue is resolved. If the relevant documents demonstrate that a public hearing officer actually acted as an advocate, then the driver's due process right to an impartial adjudicator is violated. In the latter circumstance, because we conclude that a violation of the due process right to an impartial adjudicator is a structural error, then the driver is entitled to a new APS hearing before a constitutionally impartial adjudicator.

Here, we conclude that the public hearing officer acted as both an adjudicator *and* an advocate, which entitles Knudsen to a new APS hearing. Therefore, we will reverse and remand for a new APS hearing.[1]

---

[1] Knudsen requests that we take judicial notice of the Second District's docket for *DUI Lawyers*, *supra*, 77 Cal.App.5th 517 in order to show the vast body of evidence before that court. Because we cannot conclude that the information in the Second

## PROCEDURAL BACKGROUND

On June 14, 2021, Knudsen was arrested for violation of Vehicle Code section 23152, subdivision (a) (driving under the influence of alcohol).[2]

On February 4, 2022, an APS hearing pursuant to section 13557 was conducted.

On February 8, 2022, the APS public hearing officer found that Knudsen had been lawfully arrested and had driven with a BAC of 0.08 percent or greater. As a result, Knudsen's license was suspended pursuant to sections 13353.2 and 13353.3.

On February 22, 2022, Knudsen filed a writ of mandate with the Kern County Superior Court to challenge the suspension determination.

On March 1, 2023, the trial court denied the writ of mandate and concluded that the weight of the evidence supported the suspension.

On March 28, 2023, Knudsen filed a notice of appeal.

## FACTUAL BACKGROUND

In June 2021, at around 3:30 p.m. in Santa Cruz County, California Highway Patrol (CHP) Officer Metildi was dispatched to investigate a report of a man sitting in a car on the side of the road who had been attacked by his intoxicated wife. When Metildi arrived on scene, he saw Knudsen sitting in a running car parked on the shoulder of the road, a little girl (Knudsen's daughter) in the backseat of the car, and a woman (Knudsen's wife) standing outside the car. Metildi smelled alcohol on Knudsen and observed that Knudsen's eyes were red and watery, but Knudsen's speech was normal. Knudsen stated that he had been drinking from about 9:00 a.m. to 2:30 p.m., had consumed four beers, and had started to drive at 3:00 p.m. Knudsen said that he was on

District's docket is necessary, helpful, or sufficiently relevant to resolution of this appeal, we deny Knudsen's request for judicial notice. (See *Abatti v. Imperial Irrigation Dist.* (2020) 52 Cal.App.5th 236, 249, fn. 6; *Center for Community Action & Environmental Justice v. City of Moreno Valley* (2018) 26 Cal.App.5th 689, 695, fn. 4.)

[2] Unless otherwise noted, all further undesignated statutory references are to the Vehicle Code.

3.

his way home to Concord, California.  Metildi then administered four field sobriety tests. Although Knudsen passed the "walk and turn" test, he performed poorly on the "horizontal gaze nystagmus," "one leg stand," and "modified Romberg balance" tests. Metildi then administered two preliminary alcohol screening (PAS) tests at 4:37 p.m. and 4:39 p.m., which yielded BAC results of 0.86 percent and 0.84 percent, respectively.  In light of Knudsen's poor performance on the field sobriety tests, the PAS results, and his admission of driving prior to Metildi's arrival, Metildi placed Knudsen under arrest for violation of section 23152, subdivision (a).  Metildi then administered two evidentiary breath tests (on a different device from the one he took the PAS tests) at 4:45 p.m. and 4:48 p.m., which yielded BAC results of 0.09 percent and 0.09 percent.

### APS SYSTEM

In California, the DMV must immediately suspend the driver's license of a person who is driving with BAC of 0.08 percent.  (§ 13353.2, subd. (a)(1).)  However, drivers have a right to an administrative hearing before the suspension of a license takes effect.  At the hearing, which is known as an APS hearing, a public hearing officer determines:  whether an arresting officer had reasonable cause to believe the driver was driving, whether the driver was lawfully arrested, and whether the driver was driving with a BAC of 0.08 percent or greater.  (*Evans v. Gordon* (2019) 41 Cal.App.5th 1094, 1101.)  The Legislature crafted the APS laws to address the time lag that often occurs between an arrest and a conviction for driving while intoxicated or with a prohibited blood-alcohol concentration.  (*MacDonald v. Gutierrez* (2004) 32 Cal.4th 150, 155.)  "[A]rrestees who would eventually be convicted of an intoxication-related driving offense were permitted to continue driving and, possibly, endangering the public."  (*Ibid.*) Additionally, arrestees "with extremely high blood-alcohol concentration levels at the time of arrest could escape license suspension or revocation by plea bargaining to lesser crimes or entering pretrial diversion.  Thus, by providing for an administrative license suspension prior to the criminal proceeding, the law affords the public added protection." (*Ibid.*)

4.

## DISCUSSION

### I.      Forfeiture of Constitutional Error

#### A.      *Parties' Arguments*

The DMV argues that, because Knudsen did not object or raise the issue of his due process right to an impartial adjudicator at the APS hearing, he has forfeited the issue. Knudsen responds, among other things, that an objection would have been "fruitless" and futile.

#### B.      *Analysis*

The DMV is correct that claims or constitutional issues not raised in earlier civil or administrative proceedings are generally forfeited. (See *In re Marriage of Minkin* (2017) 11 Cal.App.5th 939, 958; *Southern Cal. Underground Contractors, Inc. v. City of San Diego* (2003) 108 Cal.App.4th 533, 549.) However, appellate courts also have traditionally excused parties for failing to raise an issue below where an objection would have been futile. (See *People v. Gomez* (2018) 6 Cal.5th 243, 286–287; *In re S.F.* (2023) 91 Cal.App.5th 696, 725; *Teacher v. California Western School of Law* (2022) 77 Cal.App.5th 111, 129; *In re Valerie A.* (2007) 152 Cal.App.4th 987, 1001.) Further, appellate courts have the discretion to consider a pure question of law involving undisputed facts even if the question was not raised below. (*Fort Bragg Unified School Dist. v. Colonial American Casualty & Surety Co.* (2011) 194 Cal.App.4th 891, 907 (*Fort Bragg*); *Mito v. Temple Recycling Center Corp.* (2010) 187 Cal.App.4th 276, 279 (*Mito*).)

In this case, we do not believe that the forfeiture rule should be applied. First, the issue of whether Knudsen's due process rights were violated involves only the undisputed facts of the record below and raises a question of law. (*Linton v. DeSoto Cab Co., Inc.* (2017) 15 Cal.App.5th 1208, 1215; *Hall v. Superior Court* (2016) 3 Cal.App.5th 792, 808 (*Hall*).) As such, we may consider the issue. (*Fort Bragg*, *supra*, 194 Cal.App.4th at p. 907; *Mito*, *supra*, 187 Cal.App.4th at p. 279.) Second, at the time of Knudsen's APS hearing, the DMV had been actively defending litigation in *DUI Lawyers* in which due

5.

process challenges were being made to the DMV's APS system and policies. (*DUI Lawyers*, *supra*, 77 Cal.App.5th at pp. 526–528.) Given the DMV's defense of its policies during active litigation at the time of Knudsen's APS hearing, we do not see any reasonable chance of the public hearing officer/DMV doing anything other than overruling an objection. Thus, an objection to the constitutionality of the APS system would have been futile.

## II.    Nature of the Constitutional Error in DUI Lawyers

### A.    *Parties' Arguments*

Knudsen argues that *DUI Lawyers* found that the structure of the APS hearing violated due process because the public hearing officer acts as both an advocate and an adjudicator. Knudsen argues that because *DUI Lawyers* found a structural error, and because that error was present at his hearing, the APS decision must be reversed without regard to harm.

The DMV responds that actual bias and prejudice are necessary to reverse a judgment based on a due process violation. Indeed, Knudsen cannot demonstrate actual bias or prejudice because the record reflects that the public hearing officer admitted evidence without objection and permitted Knudsen to admit the evidence and call the witnesses that he wanted. Further, the structural error doctrine should not be imposed in this case. The three factors from *Weaver v. Massachusetts* (2017) 582 U.S. 286 that have been adopted by the California Supreme Court to consider whether the structural error doctrine should be applied in noncriminal cases weigh against finding a structural error. First, the APS system is designed to ensure a correct nonerroneous result is reached. Second, the entire record of the APS system is present, which permits review for substantial evidence, errors, and harmlessness without the need for speculation. Third, there was nothing fundamentally unfair about Knudsen's APS hearing, and finding that there was structural error would exact a particularly steep cost. Specifically, there are 100,000 citations for driving with a BAC over 0.08 percent. Of those 100,000 citations,

40,000 result in an APS hearing. Finding structural error could result in dangerous drivers getting back on the road, contrary to the legislative purpose behind the APS system.

We do not fully agree with the analysis of either Knudsen or the DMV.

**B.** ***Relevant Case Law***

### 1. Due Process Right to Impartial Adjudicator in an Agency Hearing

"Where due process requires an administrative hearing, the individual has the right to a tribunal 'which meets at least the currently prevailing standards of impartiality.' " (*Applebaum v. Board of Directors* (1980) 104 Cal.App.3d 648, 657; see *Hackethal v. California Medical Assn.* (1982) 138 Cal.App.3d 435, 442; *Blinder v. Tom* (1986) 181 Cal.App.3d 283, 295.) An impartial adjudicator, even in the agency setting, is an "irreducible minimum" requirement of due process. (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 212 (*Today's Fresh Start*).) The currently prevailing standards of impartiality recognize that the right to an impartial, nonbiased adjudicator is violated in one of two ways, through either (1) actual bias, or (2) a constitutionally intolerable probability of bias. (*Morongo Band of Mission Indians v. State Water Resources Control Bd.* (2009) 45 Cal.4th 731, 737 (*Morongo Band*); see *Caperton v. A.T. Massey Coal Co.* (2009) 556 U.S. 868, 883–884 (*Caperton*); *Today's Fresh Start*, at pp. 219, 221; see also *Williams v. Pennsylvania* (2016) 579 U.S. 1, 4, 14 (*Williams*); *Withrow v. Larkin* (1975) 421 U.S. 35, 47, 55 (*Withrow*).) To demonstrate a due process violation of the right to an impartial adjudicator, the complaining party must lay a specific foundation that is supported by specific evidence that demonstrates either actual bias or a constitutionally intolerable probability of bias. (*Todays' Fresh Start*, at p. 221; *Morongo Band*, at p. 741.)

While driving is a privilege afforded by the issuance of a license by the state (*People v. Linares* (2003) 105 Cal.App.4th 1196, 1199), once a driver's license is issued,

the driver has a property right in the license, and the license cannot be revoked or suspended unless certain constitutional due process protections are followed. (*Bell v. Burson* (1971) 402 U.S. 535, 539 [explaining that procedural due process requirements limit the power to terminate an entitlement such as a driver's license irrespective of "whether the entitlement is denominated a 'right' or a 'privilege' "]; *DUI Lawyers*, *supra*, 77 Cal.App.5th at p. 524.) The due process protection of an impartial adjudicator is one such due process protection that applies when the government attempts to suspend or revoke a driver's license. (*DUI Lawyers*, at p. 524.)

### 2.    DUI Lawyers

The Second District recently addressed the requirement of an impartial adjudicator within the APS hearing context. *DUI Lawyers* involved a challenge to a DMV policy that required the same DMV employee to, among other things, act as both an adjudicator and an advocate. (*DUI Lawyers*, *supra*, 77 Cal.App.5th at p. 526.) *DUI Lawyers* reviewed several California cases that had examined the due process implications of overlapping functions within an agency. (*Id.* at p. 531.) From its review, *DUI Lawyers* concluded that case law supported the following proposition:

> "Although procedural fairness does not prohibit the combination of the advocacy and adjudicatory functions within a single administrative agency, tasking the same individual with both roles violates the minimum constitutional standards of due process. The irreconcilable conflict between advocating for the agency on one hand, and being an impartial decision maker on the other, presents a " 'particular combination of circumstances creating an unacceptable risk of bias.' " (*Today's Fresh Start*, *supra*, 57 Cal.4th at p. 221, quoting *Morongo Band ...* [, *supra*,] 45 Cal.4th [at p. 741.)" (*Id.* at 532.)

Of note, *DUI Lawyers* acknowledged that an agency could have a single individual perform multiple functions, such as collecting and developing evidence and acting as an adjudicator, without violating the constitutional right to due process. (*DUI Lawyers*, *supra*, 77 Cal.App.5th at p. 533, fn. 5.) The constitutional problem arose only

8.

from the public hearing officer acting as advocate and adjudicator. (*Ibid.*) Because the DMV acknowledged that it "is a party to an APS hearing, the hearing is adversarial, and the hearing officer's role involves both advocating on behalf of the DMV and acting as fact finder," this created a constitutionally intolerable risk of bias by the hearing officers against the drivers. (*Id.* at p. 532.) That is, the policy implemented by the DMV violated the due process right to an impartial adjudicator. (*Id.* at pp. 532–533, 535.) To remedy this unconstitutional practice, *DUI Lawyers* held section 14112, subdivision (b) to be unconstitutional "to the extent it permits the DMV to combine the advocacy and adjudicatory roles in a single APS hearing officer" (*DUI Lawyers*, at p. 533, fn. omitted) and imposed an injunction permanently enjoining the DMV "from having its APS hearing officers function as advocates for the position of the DMV in addition to being finders of fact in the same adversarial proceeding." (*Id.* at p. 538.)[3]

Although *DUI Lawyers* used the term "structure" to describe contentions relating to the APS hearing system (*DUI Lawyers, supra*, 77 Cal.App.5th at p. 530), it did not actually hold that the error was a structural error. Indeed, *DUI Lawyers* did not discuss whether the constitutional violation at issue constituted a structural error or was instead subject to a harmless error analysis. *DUI Lawyers* simply found that the taxpayers before it had demonstrated an unconstitutional practice that needed to be corrected.

---

[3] On July 20, 2022, the California Supreme Court issued the following order: "The request for an order directing depublication of the opinion in the above-entitled appeal is denied. The court declines to review this matter on its own motion. The matter is now final." (*California DUI Lawyers Assn. v. California Department of Motor Vehicles* (July 20, 2022) 2022 Cal. LEXIS 4094.) Therefore, since July 20, 2022, *DUI Lawyers*'s injunction against the DMV, as well as the rationale behind that injunction, have been final and operative.

### 3. Federal and State Authority on Absence of Impartial Adjudicator

#### a. *California Supreme Court*

In the criminal context, our Supreme Court has explained that "[e]stablishing a violation of this right [to an impartial adjudicator] requires 'an objective assessment of the circumstances in the particular case' and ' " 'the probability of actual bias on the part of the judge or decisionmaker [that] is too high to be constitutionally tolerable.' " ' " (*People v. Nieves* (2021) 11 Cal.5th 404, 498, citing *People v. Freeman* (2010) 47 Cal.4th 993, 996 and *Rippo v. Baker* (2017) 580 U.S. 285, 287 (*Rippo*)[4].) *Nieves* explained that the " 'controlling principle' of unconstitutional bias rests on a 'general concept of interests' that may prevent adjudicators from remaining 'disinterested in the conviction or acquittal of those accused." ' " (*Id.* at p. 499, quoting *Caperton*, *supra*, 556 U.S. at pp. 878, 880.) "Though traditionally focused on pecuniary influences … the high court has explained that there may be a disqualifying interest in the outcome of criminal proceedings that 'rests on the relationship between the judge and the defendant.' " (*Nieves*, at p. 499, citing *Caperton*, at p. 881.) *Nieves* framed the question before it as whether the trial judge's comments "reflect a constitutionally intolerable possibility that he harbored an interest in the outcome of defendant's trial." (*Nieves*, at p. 499.) *Nieves* reviewed comments made by the trial court and found that the comments did not "raise an objective likelihood that [the judge] was actually biased against the defendant." (*Ibid.*) "Accordingly, we find no structural error, and will assess the court's misconduct for prejudice." (*Ibid.*) It is apparent from *Nieves*'s analysis that if the probability/likelihood of bias was too high, then there would have been structural error and no assessment of prejudice or harmlessness. (*See id.* at pp. 498–499.)

---

[4] *Rippo* quoted *Withrow*, *supra*, 421 U.S. 35 for the proposition that "[r]ecusal is required when, objectively speaking, 'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.' " (*Rippo*, *supra*, 580 U.S. at p. 287.)

### b. *Federal Authority*

In the criminal and habeas corpus contexts,[5] the federal courts have often expressed the rule that structural error occurs when there is a constitutionally intolerable risk or probability of judicial bias. The United States Supreme Court has found "an unconstitutional failure to recuse constitutes structural error," (*Williams*, *supra*, 579 U.S. at p. 4) and that recusal is constitutionally required "when the likelihood of bias on the part of the judge ' "is too high to be constitutionally tolerable" ' " (*id*. at p. 14, discussing in part *Withrow*, *supra*, 421 U.S. at p. 47; see also *U.S. v. Liggins* (6th Cir. 2023) 76 F.4th 500, 505).

The Sixth Circuit has noted that "judicial bias is a structural defect both when actual and when merely unconstitutionally probable …." (*Coley v. Bagley* (6th Cir. 2013) 706 F.3d 741, 750.)

The Ninth Circuit has held that an appearance of bias may be too high and thus, violates due process when, among other things, a trial judge was " 'part of the accusatory process.' " (*Greenway v. Schriro* (9th Cir. 2011) 653 F.3d 790, 806, citing *In re Murchison* (1955) 349 U.S. 133, 137.) The Ninth Circuit also noted that cases in which due process was violated without actual bias seemed to involve either "some direct, personal relationship of the judge to the case, or with one of the parties, before the judge." (*Greenway v. Schriro*, at p. 807.) Although the Ninth Circuit found insufficient judicial bias or probability of judicial bias in the case before it, it faulted the state court for applying a harmless error analysis "because when a defendant's right to have his case

---

[5] We acknowledge that there are distinctions between the liberty interest in a driver's license and the liberty interest in a criminal defendant's freedom. As discussed later, and as acknowledged in *In re Christopher L.* (2022) 12 Cal.5th 1063 (*Christopher L.*), structural errors from the criminal law are not to be automatically applied in noncriminal law contexts.

tried by an impartial judge is compromised, there is structural error that requires automatic reversal." (*Id.* at p. 805.)

### c.     *California Appellate Authority*

In *Nightlife Partners, Ltd. v. City of Beverly Hills* (2003) 108 Cal.App.4th 81 (*Nightlife Partners*), the remedy for a hearing conducted without a neutral adjudicator (due to overlapping roles of adjudicator and advocate) was a new hearing conducted by a new officer and permitting the hearing officer to be advised by someone who had not served as the city's advocate in the case. (*Id*. at pp. 94, 97–98.)  There was no discussion regarding harmless error. (*Ibid.*)

In *Howitt v. Superior Court* (1992) 3 Cal.App.4th 1575, a writ sought to prevent the county counsel who had been acting as an advocate for the county from also advising the county personnel board; the writ was filed prior to a hearing by the personnel board. (*Id*. at p. 1578.)  As in *Nightlife Partners*, *Howitt* acknowledged that the neutrality of the adjudicator was endangered because county counsel would be acting as an advocate and an advisor to the adjudicator. (*Howitt v. Superior Court*, at pp. 1585–1586.)  However, in terms of a remedy, *Howitt* denied the writ without prejudice in order for the county to demonstrate effective screening measures by county counsel. (*Id.* at pp. 1586–1587.) "Needless to say, if county counsel cannot demonstrate an effective screening procedure in this case, the renewed petition should be granted." (*Id.* at p. 1587.)  *Howitt* did not suggest that the absence of a proper screening mechanism would then somehow make a harmless error analysis appropriate.

In *Applebaum v. Board of Directors*, *supra*, 104 Cal.App.3d 648, a doctor alleged, among other things, that revocation of his privileges at a hospital was improper because the adjudicatory board was not impartial. (*Id.* at pp. 654.)  The trial court and the Court of Appeal agreed that the hospital adjudicatory board was not impartial because the board included the instigator of the charges against the physician, as well as other individuals who had overlapping membership in a committee that had made an initial determination

12.

against the physician. (*Id*. at pp. 655, 659–660.) The Court of Appeal affirmed reinstatement of the physician's privileges pending a proper administrative hearing. (*Id*. at p. 661.) There was no discussion of harmless error from the absence of an impartial adjudicator. (*Id*. at pp. 659–661.)

Finally, in *Hall v. Superior Court*, *supra*, 3 Cal.App.5th 372, an APS hearing was found to involve an intolerable probability of bias from a DMV hearing officer. (*Id*. at p. 810.) The remedy for this due process violation was a new hearing before an impartial adjudicator. (*Ibid.*) There was no discussion concerning harmless error.

### 4. Christopher L.

In *Christopher L.*, *supra*, 12 Cal.5th 1063, our Supreme Court found no structural error, and instead applied a harmless error analysis, when a statutory right to notice and counsel was violated in a child dependency proceeding. (*Id*. at p. 1069.) *Christopher L.* noted that structural errors are generally found in the criminal context and that structural error analysis should not be imported " 'wholesale, or unthinkingly' " from criminal cases into other contexts. (*Id.* at p. 1074.) *Christopher L.* then examined the three rationales for finding structural error that were identified in *Weaver v. Massachusetts*, *supra*, 582 U.S. 286. (*Christopher L*., at pp. 1077–1082.) The three rationales are: (1) if the right at issue is designed to protect the defendant from erroneous conviction instead of protecting another interest; (2) the effects of the error are simply too hard to measure; and (3) the error always results in fundamental unfairness. (*Id*. at p. 1077.)

As applied to this case, it is well established that drivers have a liberty interest in their drivers' licenses. (*Bell v. Burson*, *supra*, 402 U.S. at p. 539.) Considering the protected interest in a driver's license, as well as the hardship that could easily arise from the deprivation of the license, it appears that an insufficiently neutral adjudicator meets at least two of the three *Weaver* rationales, if not all three. First, the requirement of a neutral adjudicator serves a critical interest in providing society with confidence that adjudications concerning important entitlements and liberty interests are made on proper,

13.

objectively reasonable, and neutral grounds.[6]  (Cf. *Turkington v. Municipal Court of San Francisco* (1948) 85 Cal.App.2d 631, 639 [in the context of statutory requirements for recusal noting that "[i]t is most important that the decisions of courts should be afforded the respect and confidence of the community, but, in order to warrant such respect and confidence, it is fundamental that such decisions should be above the suspicion that they were rendered by a judge who was biased and prejudiced and had an interest in the litigation"].)  Second, the presence of a biased adjudicator permeates the entirety of the proceedings, which makes it impossible to truly understand the harm that may have resulted.  (See *Arizona v. Fulminante* (1991) 499 U.S. 279, 309–310 ["The entire conduct of the trial from beginning to end is obviously affected by … the presence on the bench of a judge who is not impartial"]; *Hall*, *supra*, 3 Cal.App.5th at pp. 810–811.)  The APS hearing officer is the officer charged with conducting the hearing, admitting evidence, addressing objections, weighing evidence, and making the ultimate determination as to whether a driver's license will be suspended for driving with a BAC over 0.08 percent.  Third, it has been recognized that having an insufficiently neutral adjudicator adversely affects the fairness of the proceedings in a fundamental way.  (*Neder v. United States* (1999) 527 U.S. 1, 9 ["Unlike such defects as the complete deprivation of counsel or trial before a biased judge, an instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence"].)  With respect to both courts and agencies, a " 'fair trial in a fair tribunal is a basic requirement of due process,' " which is not only why "a biased

---

[6] It could be argued that the presence of an impartial adjudicator also is meant to ensure that an erroneous adjudication does not occur.  (Cf. *Christopher L.*, *supra*, 12 Cal.5th at p. 1077 (noting that the first *Weaver* rationale was neutral because multiple rationales, including guarding against erroneous adjudications, were at play.)  However, the presence of a neutral decisionmaker does not necessarily ensure that mistakes or errors are not made, it simply ensures that the adjudicator will attempt to decide the matter fairly and without giving one side an automatic advantage.

14.

decisionmaker is constitutionally unacceptable," but also why " 'our system of law has always endeavored to prevent even the probability of unfairness.' " (*Withrow*, *supra*, 421 U.S. at p. 47.) Therefore, it can hardly be considered fundamentally fair to have the individual tasked with making ultimate determinations concerning an individual's important liberty interests fail to be constitutionally impartial.[7]

Given these considerations, we cannot conclude that *Christopher L.* or *Weaver* can be read as supporting the absence of an impartial adjudicator as anything other than a structural error. To hold otherwise would mean that a constitutionally impartial adjudicator is not truly an "irreducible minimum" requirement of due process. (*Today's Fresh Start*, *supra*, 57 Cal.4th at p. 212).

### 5. Other Cases Cited by DMV

#### a. *Southern Cal. Underground Contractors*

The DMV relies on *Southern Cal. Underground Contractors, Inc. v. City of San Diego*, *supra*, 108 Cal.App.4th 533 to argue that a possibility or appearance of bias is not enough to warrant reversal, rather, actual bias must be demonstrated. *Southern Cal. Underground* addressed, among other things, the issue of whether the appellant was afforded an unbiased adjudicator where the adjudicator was the city council, the city was both prosecutor and adjudicator, and the city was a defendant in a separate suit by the appellant for money damages. (*Id.* at pp. 548–549.) The Fourth District concluded that there was not a due process violation. (*Ibid.*) In relevant part, *Southern Cal. Underground* explained:

> "[A] party claiming that the decision maker was biased must show actual
> bias, rather than the appearance of bias, to establish a fair hearing violation.

---

[7] *Christopher L.*'s "steep cost" language was specifically dependent on the finding that the violation before it did not routinely result in a constitutional violation or unfairness. (*In re Christopher L.*, *supra*, 12 Cal.5th at p. 1081.) That violation was the absence of a parent and counsel, not the absence of a constitutionally impartial adjudicator. (*Id.* at p. 1069.)

15.

(*Andrews v. Agricultural Labor Relations Bd.* (1981) 28 Cal.3d 781, 791–794 …..) '[B]ias in an administrative hearing context can never be implied, and the mere suggestion or appearance of bias is not sufficient. [Citation.] It is also well established that a party is not denied an impartial adjudicator merely because an administrative entity performs both the functions of prosecutor and judge. [Citation.] Overlapping investigatory, prosecutorial and adjudicatory functions do not necessarily deny a fair hearing and are common before most administrative boards. [Citations.]' (*Hongsathavij v. Queen of Angels etc. Medical Center* (1998) 62 Cal.App.4th 1123, 1142.)" (*Id.* at p. 549.)

The relevance of *Southern Cal. Underground*, however, is questionable. *Southern Cal. Underground* was decided before our Supreme Court issued opinions in *Today's Fresh Start* and *Morongo Band*. As shown above, those two cases clearly hold that a due process right to an impartial adjudicator applies in an administrative agency setting and that the right is violated by showing either actual bias or a constitutionally intolerable risk/probability of bias by the adjudicator. (*Today's Fresh Start*, *supra*, 57 Cal.4th at pp. 219, 221; *Morongo Band*, *supra*, 45 Cal.4th at pp. 737, 741.) Therefore, *Southern Cal. Underground*'s observation that "a party claiming that the decision maker was biased must show actual bias, rather than the appearance of bias, to establish a fair hearing violation," is no longer a fully accurate statement of the law. If there is a constitutionally intolerable probability of bias, the constitution is violated irrespective of whether actual bias exists. (See *Caperton*, *supra*, 556 U.S. at pp. 883–884; *Today's Fresh Start*, at pp. 219, 221; *Morongo Band*, at pp. 737, 741.)

### b. *Due Process Cases*

The DMV correctly cites five state appellate cases for the proposition that a party asserting a due process violation must demonstrate that without the violation of due process, there is "a reasonable probability of a more favorable result." However, there are many different ways that due process may be violated. Each of the five cases deals

16.

with a unique due process error, but none involve the due process right to an impartial adjudicator.[8]

### C. *Conclusion*

#### 1. **Structural Error**

California and federal cases either expressly recognize or appear to assume that the violation of the due process right to an impartial adjudicator, be it through a showing of actual bias or through a showing that a constitutionally intolerable probability/risk of bias exists, is deemed a structural error that requires reversal without regard to the sufficiency of the evidence or the possibility of a harmless error analysis. (E.g. *Williams*, *supra*, 579 U.S. at pp. 4, 14; *Coley v. Bagley*, *supra*, 706 F.3d at p. 750; *Greenway v. Schriro*, *supra*, 653 F.3d at pp. 805–806; *People v. Nieves*, *supra*, 11 Cal.5th at pp. 498–499; *Hall*, *supra*, 3 Cal.App.5th at pp. 810–811; *Nightlife Partners*, *supra*, 108 Cal.App.4th at pp. 94, 97–98; *Applebaum v. Board of Directors*, *supra*, 104 Cal.App.3d at pp. 659–661.) An impartial adjudicator is a foundational and irreducible minimum requirement for due process (*Today's Fresh Start*, *supra*, 57 Cal.4th at p. 212), and the presence of an adjudicator who is not constitutionally impartial is recognized to be fundamentally unfair. (*Neder v. United States*, *supra*, 527 U.S. at p. 9.)

---

[8] The five cases and due process issues involved are: (1) *Malaga County Water Dist. v. State Water Resources Control Bd.* (2020) 58 Cal.App.5th 418, 445–446 (matter remanded for further consideration where the due process violation involved the use of "a void underground regulation to set hearing procedures"); (2) *Hipsher v. Los Angeles County Employees Retirement Assn.* (2020) 58 Cal.App.5th 671, 702–703 (prejudice found for the due process violation of failing to provide notice and the right to be heard); (3) *Margarito v. State Athletic Com.* (2010) 189 Cal.App.4th 159, 172–173 (no prejudice regarding alleged withholding of impeachment evidence); (4) *In re Esmeralda S.* (2008) 165 Cal.App.4th 84, 95 (no prejudice from appointment of guardian ad litem because appointment did not prevent mother from raising issues on her own); and (5) *Hinrichs v. County of Orange* (2004) 125 Cal.App.4th 921, 928 (no prejudice found from an agency's "failure to expressly inform [Hinrichs] of the name and rank of the officers interrogating her, or of the nature of the investigation …").

Moreover, it is unknown how the harm from a constitutionally compromised adjudicator can be assessed because, in the APS context, the public hearing officer must weigh evidence, resolve conflicts, make assessments, findings, and rulings, and ultimately render a judgement – the presence of a constitutionally intolerable risk permeates each of these tasks. (Cf. *Hall*, at pp. 810–811.) Therefore, we conclude that the absence of a constitutionally impartial adjudicator, through either the presence of actual bias or a constitutionally intolerable probability of bias, at an APS hearing is a structural error.

### 2.     Application to APS Hearing Appeals

*DUI Lawyers* did not address how its analysis and conclusions would necessarily apply to a driver who challenges the revocation of his license from an APS hearing in which DMV policy required the hearing officer to act as both adjudicator and advocate. Indeed, no driver's revocation was actually before the Second District in *DUI Lawyers*. Rather, *DUI Lawyers* was brought as a taxpayer action against the DMV. A lawyers' association alleged that the DMV was engaging in waste under Code of Civil Procedure section 526a because it was expending funds on an APS system that violated drivers' rights to procedural due process through a hearing officer who acted as both advocate and adjudicator. (*California DUI Lawyers Assn. v. Department of Motor Vehicles* (2018) 20 Cal.App.5th 1247, 1251, 1253, 1259.) As a taxpayer challenge, *California DUI Lawyers Assn.* applied constitutional principles to theoretical circumstances and with the assumption and understanding that DMV policies would be fully executed and implemented in every APS proceeding. That is, *California DUI Lawyers Assn.* assumed that a hearing officer would actually act as an advocate in addition to acting as an adjudicator, as required by policy. (See Evid. Code, § 664 ["It is presumed that official duty has been regularly performed"]; cf. *Ketchum v. California* (1998) 62 Cal.App.4th 957, 964 ["The Legislature can presume that once a policy is adopted, it will be followed"]; *State Board of Education v. Honig* (1993) 13 Cal.App.4th 720, 749 [presuming compliance with board procedures].)

Nevertheless, in an actual case, it may be that a public hearing officer did not actually act as an advocate despite the DMV' stated policy. Considering that a prima facie case, which establishes the necessary facts to revoke a license may often be established through the submission of documents (*Gerwig v. Gordon* (2021) 61 Cal.App.5th 59, 65–66; *Delgado v. DMV* (2020) 50 Cal.App.5th 572, 577), scenarios can easily be envisioned in which the hearing officer adjudicates without actually acting as an advocate. In particular, as recognized by *DUI Lawyers* itself, the same agency employee may collect and develop evidence and act as the adjudicator in a single case without offending due process. (Cf. *DUI Lawyers*, *supra*, 77 Cal.App.5th at p. 533, fn. 5.) As such, it is possible that in a particular case, the public hearing officer merely collected and developed evidence and then rendered a decision without actually engaging in advocacy or acting as an advocate. (*Ibid.*) Again, *DUI Lawyers* found that the due process right to an impartial adjudicator was violated because a public hearing officer who acts as both advocate and adjudicator creates a constitutionally intolerable risk of bias. (*DUI Lawyers*, at p. 532.) If a hearing officer does not actually act as an advocate, but instead merely collects and develops evidence and then renders a decision, then the due process right to an impartial adjudicator would not be violated in a particular case because the adjudicator did not actually act as an advocate. (Cf. *id.* at p. 533, fn. 5.) In such a circumstance, constitutional due process protections are respected and implemented, and the goals of public safety and minimizing the time that heavily intoxicated drivers are permitted to travel the public highways are fulfilled.

In light of the above, we believe that the DMV should be given the opportunity to show that a public hearing officer did not actually act as an advocate. Whether a hearing officer actually acted as an advocate for the DMV should be determined by examining the records and transcripts of the APS hearing, as well as the decision rendered by the hearing officer. The analysis will necessarily depend on the unique facts of each hearing. If the DMV can make a showing that the hearing officer did not actually act as an

19.

advocate, it will have also demonstrated that the due process violation identified in *DUI Lawyers* did not actually occur. As a result, no constitutional error would be present, and the merits of any other properly preserved issues may be addressed. If the DMV cannot adequately demonstrate that a hearing officer did not actually act as an advocate, then the due process violation identified in *DUI Lawyers* will have occurred.

## III. Knudsen's Due Process Rights

### A. *Arguments*

The DMV argues that due process was not violated because the public hearing officer did not act as an advocate. Instead, the hearing officer presented the official documents that are routinely admitted in all APS hearings, asked only several clarifying questions, permitted Knudsen to admit evidence and call witnesses, and then rendered a decision. Thus, the hearing officer's conduct shows that he merely acted as a developer and presenter of the evidence and not as an advocate. We disagree with the DMV's assessment.

### B. *Additional Background*

#### 1. APS Hearing

At the APS hearing on February 4, 2022, the public hearing officer explained the purpose of the hearing, presented, and admitted exhibits without objection, admitted all exhibits requested by Knudsen, and permitted Knudsen to call the two witnesses he requested.

The first witness was CHP Officer Murphy who was responsible for monitoring and calibrating the PAS device used by Officer Metildi on Knudsen. Murphy testified that the device had been calibrated on June 11, 2021, and was found to be reading within acceptable tolerance levels. Murphy explained a known sample containing 0.100 percent alcohol was read by the PAS device as containing 0.107 percent alcohol, and the acceptable tolerance levels were between 0.110 percent or 0.09 percent. The hearing

officer only asked Murphy if he maintained the calibration checklist and if the checklist had Murphy's name on it, to which Murphy responded affirmatively.

The second witness was Ron Moore, a toxicologist with over 32 years of experience who had testified in hundreds of DMV hearings and criminal trials. The hearing officer accepted that Moore was a qualified expert. Moore reviewed the arrest report/the officer's statement and the PAS device's calibration records. Based on the review of these records (which had previously been admitted by the hearing officer), Moore opined that "it's apparent that [Knudsen] was under .08 at the time he was driving." Moore explained that the calibration record of June 11 showed the PAS device was measuring 0.007 percent too high. Adjusting for this high bias would mean that the PAS results of 0.086 percent and 0.084 percent would reflect an actual BAC in the "07's."[9] Also, following the PAS results, the two evidentiary results showed BACs of 0.09 percent and 0.09 percent, meaning that Knudsen's BAC was rising. Given the 0.007 percent high bias of the PAS device and the rising BAC levels, Moore testified it was clear Knudsen would be under 0.08 percent at the time of driving. Moore also noted that Knudsen was not stopped for bad driving, had no slurred speech, and passed the walk and turn field sobriety test. This information, combined with the chemical test readings, was consistent with the finding that Knudsen drove with a BAC of less than 0.08 percent. Moore explained that he accepted the accuracy of Officer Metildi's observations, he did not need any testimony from Knudsen, that there was no need for additional information, he was not speculating, and that his opinion was objective and accepted the exhibits and documents exactly as they were.

The hearing officer asked Moore several questions. As relevant to this case, the hearing officer asked Moore if he conducted "any scientific study on this particular

_____

[9] We take this to mean that the two results would actually reflect BACs of 0.079 percent and 0.077 percent.

21.

individual." Moore responded that he did not and that "[t]here's no purpose in doing any type of scientific study. I'm not alleging there's anything unusual about him or that the Department's information is incorrect." The following exchange then occurred:

"HEARING OFFICER OGAMBA: Apart from the no bad driving or something, you know, the question that I have to ask is that, since you've been testifying in this case, [Knudsen] indicated he drove at 3 o'clock, and how did you arrive to the point that he was not -- he was under .08 while driving?

"MR. MOORE: Well … alcohol levels generally go up while you're drinking, and tend to go up for a period of time afterwards until you reach your peak, and then they come back down. So it goes up, it reaches a peak, and then it comes down. Looking at the chemical test results, they're still going up, so that means that prior to the time the chemical test the alcohol level would be lower, and which it's just a matter of math.

"HEARING OFFICER OGAMBA: Okay. So you say that looking at the alcohol would still be going up. So you are not saying for sure that you that is below .08? You're saying that you could be below .08 while driving; is that correct?

"MR. MOORE: No, I'm quite confident he's under .08 when driving because he's only at .084 when the PAS test is done about an hour later, even an hour and a half later. So he has to be lower than that. Plus there's the fact that the PAS is reading about a .007 too high. So even though the PAS readings to correctly interpreted as … being under .08."

The hearing officer asked no further questions of Moore.

Knudsen's counsel asked several follow up questions of Moore regarding the PAS device's calibration and then gave a closing statement. The hearing officer did not respond, but instead took the matter under submission.

### 2. APS Decision

The hearing officer issued a decision that suspended Knudsen's license for driving with a BAC of 0.08 percent or more. In part, the decision discussed Moore's testimony. The decision noted that Moore's opinion was based on DMV evidentiary documents and that Moore did not perform any scientific studies on Knudsen. The decision stated,

"Expert testified based on his opinion reviewing the department's evidence and respondent's driving pattern, respondent more likely to [be] under [0.08 percent]." The decision stated that little weight was given to the expert's opinion, and more weight was given to DMV documentary evidence that "establishes that the [Knudsen] was driving a motor vehicle at the time he had 0.08% or more [BAC level]. The hearsay evidence presented is insufficient to support the contention." The decision twice stated that, looking at the totality of the documentary evidence submitted, the three-hour presumption was not rebutted.

## C.    *Legal Standard*

" 'A challenge to the procedural fairness of the administrative hearing is reviewed de novo on appeal because the ultimate determination of procedural fairness amounts to a question of law.' " (*Hall*, *supra*, 3 Cal.App.5th at p. 808.) As explained above, for purposes of the constitutional violation identified by *DUI Lawyers*, *supra*, 77 Cal.App.5th 517 that is at issue in this case, we review to determine whether the DMV has demonstrated that the public hearing officer acted as a collector and developer of evidence and not as an advocate.

## D.    *Discussion*

There are several aspects of the APS hearing and the APS suspension decision that lead us to conclude that the public hearing officer acted as an advocate.

First, the public hearing officer asked Moore if Moore had conducted any studies on Knudsen. Moore had previously and clearly explained that the basis for his opinions were strictly the documents that had been admitted by the hearing officer, specifically the officer's report and statement and the chemical test results. Given the clarity of Moore's testimony, the question does not appear to be legitimately developing Moore's testimony. Instead, by pointing out something that Moore did not do, it appears to be an attempt to undermine Moore and cast doubt on his opinion. Moreover, it is unclear how the fact that Moore failed to do tests or studies on Knudsen would be relevant to assessing Moore's

23.

opinions. Moore's opinions are based on DMV documents and generally accepted scientific principles regarding testing for blood-alcohol concentration levels and how the human body processes alcohol. Moore accepted the accuracy of the DMV's documents and clearly assumed that Knudsen processed alcohol in the typically understood and normal manner. With that assumption, there was no need for Moore to conduct tests to make sure that Knudsen's metabolism and bodily functions aligned with generally accepted scientific understandings.[10]

Second, the public hearing officer asked Moore if Moore was not saying for sure that Knudsen was not driving with a BAC of 0.08 percent or more. We acknowledge that the question in isolation could be viewed as an attempt to clarify or develop testimony. The problem is that prior to the hearing officer asking this question, Moore consistently expressed his opinion without equivocation that Knudsen was not driving with a BAC over 0.08 percent. Prior to the hearing officer's question, Moore said it was "apparent" and "clear" that Knudsen was not driving with a BAC over 0.08 percent. Indeed, Moore answered the hearing officer in the negative and confirmed that he was "quite certain" that Knudsen was driving with a BAC of under 0.08 percent. Given the clarity of Moore's testimony, the hearing officer's question does not develop Moore's testimony, rather, it appears to be an attempt to change or mischaracterize Moore's testimony.

Third, the public hearing officer's decision notes and appears to rely on the fact that Moore did not conduct a study on Knudsen as a basis to discount Moore's testimony. However, there is no significant interest served by identifying the fact, nor is the fact relevant or an actual basis to discredit Moore's testimony. As noted above, Moore accepted the accuracy of the DMV's documents and did not assert that Knudsen's body

---

[10] We note that Moore's opinion related to whether Knudsen was driving with a BAC of 0.08 percent or more; it was not related to whether Knudsen was inebriated or under the influence of alcohol generally.

24.

chemistry was atypical. Nevertheless, the fact was brought out through the hearing officer's questioning and appears to have been a form of advocacy.

Fourth, the APS decision described Moore as testifying that Knudsen's BAC was "more likely" under 0.08 percent. That is inaccurate. As discussed above, Moore said that it was "apparent" and "clear," and that he was "quite certain" that Knudsen was driving with a BAC of under 0.08 percent. Moore never testified as to the likelihood of Knudsen driving with a BAC of under 0.08 percent, and Moore's testimony cannot legitimately be described as simply saying it was "more likely than not" that Knudsen drove with a BAC of under 0.08 percent. The hearing officer's wording downplays Moore's response that he was "quite certain" of his opinions. Therefore, the APS decision mischaracterized the nature, and downplayed the certainty, of Moore's opinion.

Fifth, the APS decision characterized Moore as presenting hearsay evidence. This is incorrect. The pertinent testimony by Moore involved accurate descriptions of the documents admitted by the public hearing officer, Moore's description of scientific principles, and Moore's expert opinions. This testimony is consistent with typical expert testimony. None of Moore's testimony constitutes inadmissible hearsay.[11] Additionally, the hearing officer never raised any concerns regarding hearsay while Moore was testifying. Raising the hearsay issue for the first time in the suspension notice/findings did not give Knudsen an opportunity to address the issue.

Sixth, the hearing officer stated that Moore relied on Knudsen's "driving pattern" as a basis for his opinions. To the contrary, Moore did not discuss Knudsen's "driving pattern" in any way. Moore simply stated that Knudsen was not seized based on observations of Knudsen's driving.

_____

[11] "[A] hearsay statement is one in which a person makes a factual assertion out of court and the proponent seeks to rely on the statement to prove that assertion is true." (*People v. Sanchez* (2016) 63 Cal.4th 665, 674; see also Evid. Code, § 1200, subd. (a).)

Finally, the APS decision stated twice that the "three[-]hour presumption" had not been rebutted.[12]  That is, the decision clearly relied on the three-hour presumption to show that Knudsen had been driving with a BAC of 0.08 percent or greater.  The problem is that the presumption had been rebutted.  Our Supreme Court, in *Coffey v. Shiomoto*, *supra*, 60 Cal.4th at p. 1211, held that the "three[-]hour presumption" had been rebutted by the testimony of a driver's expert witness.  Like Moore, the expert in *Coffey* opined that escalating chemical tests results, combined with the scientifically understood pattern of how the human body processes/metabolizes alcohol, rebutted the "three[-]hour presumption" and, thus, caused the presumption to disappear from the case.  (*Id.* at pp. 1210–1211.)  On this point, *Coffey* is indistinguishable from this case.  Therefore, the public hearing officer committed a clear error of law that significantly benefited the DMV.

In sum, the record reflects inaccurate characterizations of important testimony, questions that were inconsistent with developing testimony, and an error of law that significantly benefited the DMV.  We conclude that these considerations collectively demonstrate that the public hearing officer acted as an advocate for the DMV.[13]  Because

---

[12] By statute, there is presumption that a person had a BAC over 0.08 percent at the time of driving if a chemical test taken within three hours of driving yields a BAC over 0.08 percent.  (See § 23152, subd. (b); *Coffey v. Shiomoto* (2015) 60 Cal.4th 1198, 1208.)

[13] We emphasize that, as the adjudicator, the public hearing officer is entitled to weigh and assess the testimony of all witnesses.  As part of an assessment, the hearing officer is not necessarily required to fully accept the testimony of any witness, including an expert witness.  In any given case, numerous reasons may legitimately exist to discount or disregard the testimony of an expert witness, and those reasons will not involve advocacy by the hearing officer.  In this case, however, the totality of the seven circumstances identified above demonstrate that the hearing officer was not merely gathering and developing evidence nor neutrally assessing the expert's credibility.  Rather, the circumstances demonstrate that the hearing officer's conduct towards Mr. Moore involved advocacy and, thus, a violation of Knudsen's due process right to an impartial adjudicator.

the hearing officer acted as an advocate *and adjudicator*, Knudsen's due process right to an impartial adjudicator was violated.  (*DUI Lawyers*, *supra*, 77 Cal.App.5th at pp. 532–533.)  As a result, Knudsen is entitled to a new APS hearing.  (*Hall*, *supra*, 3 Cal.App.5th at p. 810.)

## DISPOSITION

The superior court's order denying Knudsen's petition is reversed.  This matter is remanded with instructions for the superior court to issue a writ of mandate directing the DMV to vacate its decision and to conduct a new APS hearing before a new hearing officer.


POOCHIGIAN, Acting P. J.

WE CONCUR:


MEEHAN, J.


DE SANTOS, J.