Filed 9/12/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| GEORGE LOY CLARKE, | |
| Plaintiff and Appellant, | G062856 |
| v. | (Super. Ct. No. 30-2022-01284675) |
| STEVE GORDON, as Director, etc., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from an order of the Superior Court of Orange County, Michael J. Strickroth, Judge. Reversed and remanded. Request for judicial notice denied. Request to augment record denied.

Markelz Law Group and Christopher Markelz for Plaintiff and Appellant.

Rob Bonta, Attorney General, Chris A. Knudsen, Assistant Attorney General, Gary S. Balekjian, and Jacqueline H. Chern, Deputy Attorneys General, for Defendant and Respondent.

\*        \*        \*

George Loy Clarke appeals from the judgment which denied his petition for a writ of mandate in which he challenged an administrative decision of the California Department of Motor Vehicles (DMV) to suspend his driver's license. That decision resulted from an administrative per se (APS) hearing conducted by the DMV which followed his arrest for driving under the influence (DUI). Clarke argues the administrative decision must be reversed because (1) the manner in which the DMV conducted the administrative hearing violated due process as determined in *California DUI Lawyers Assn. v. Department of Motor Vehicles* (2022) 77 Cal.App.5th 517, 532-533 (*DUI Lawyers*); and (2) his refusal to submit to either a breath or blood test should be excused. We agree with his first contention. We therefore reverse the trial court's denial of his petition for a writ of mandate and on remand direct the court to grant the petition.

In *DUI Lawyers* the court ruled that the DMV's policy of assigning a single employee to act as both the DMV's advocate and the adjudicator in an APS hearing violated due process under the Fourteenth Amendment to the United States Constitution and article I, section 7 of the California Constitution. In *Knudsen v. Department of Motor Vehicles* (2024) 101 Cal.App.5th 186, 193 (*Knudsen*), the court considered the sufficiency of the due process provided by a DMV APS hearing in the wake of *DUI Lawyers,* and concluded it was once again inadequate. The court indicated the relevant issue to be determined in assessing a due process claim in this context is not the title applied to the DMV employee; it is the function actually performed

2

by that employee during the APS hearing. More specifically, it must be determined whether the DMV hearing officer (HO) acted as both an advocate and an adjudicator during the hearing. If the HO performed both roles, the hearing failed to satisfy due process requirements.

Applying that analysis to this case we conclude the DMV employee's effort to separate her role as the case adjudicator from her role as an advocate for the DMV was unsuccessful. We consequently find Clarke suffered a due process deprivation. *Knudsen* found a similar due process violation constituted structural error. We agree. We therefore reverse the trial court's denial of Clarke's petition for a writ of mandate.

FACTS

On September 19, 2020, at approximately 4:30 p.m., a California Highway Patrol officer observed Clarke driving at a high rate of speed. Although the officer apparently did not suspect initially that Clarke was driving under the influence, after effecting a traffic stop the officer asked him standard DUI questions. In response, Clark acknowledged he had been at a golf tournament where he had consumed three to four beers between 10:00 a.m. and 12:00 p.m. The officer then administered a series of field sobriety tests and, based on the result of those tests and other factors, the officer concluded Clarke was driving under the influence and arrested him.

Clarke's first DMV APS hearing took place on January 20, 2021, before HO Rueda who ordered Clarke's driver's license suspended. On November 29, 2021, the trial court granted Clarke's petition for a writ of mandate which overturned that suspension and remanded the case to the DMV for a new APS hearing with directions that Clarke be allowed to

3

present a defense to the allegation that he refused to complete a chemical test.

Clarke's second hearing was on September 14, 2022, before HO Wallace. Clarke stipulated that at the time of his arrest (1) the officer had reasonable cause to believe he was driving a motor vehicle in violation of Vehicle Code[1] sections 23152, 23153, or 23154; and (2) he was lawfully arrested.

Clarke contested the allegations that (1) he refused to submit to or failed to complete a chemical test; and (2) he refused to submit to or complete a chemical test after being requested to do so by a peace officer.

At the outset of the hearing, Clarke's counsel asked HO Wallace to clarify how the hearing would be conducted in light of the *DUI Lawyers* decision. The HO explained, "[w]e're to proceed with just a Hearing Officer. It's no longer advocates— . . .[¶] . . . —with just a Trier of Fact. And that was as of September 6." Clarke objected to proceeding in that manner. The HO overruled the objection; she then offered and admitted into evidence the DMV's three exhibits.

Exhibit 1 was a four-page document which included an admonishment form generally used by "Santa Ana CHP" in cases of suspected driving under the influence. Among other things, the form advises a driver, "You are required by state law to submit to and complete a chemical test to determine the alcohol and/or drug content of your blood. Because I believe you are under the influence of alcohol or a combination of alcohol and drugs, you have a choice of taking a breath or blood test."

---

[1] All statutory references are to the Vehicle Code unless otherwise specified.

4

Exhibit 2 was the arresting officer's report. It related that the officer informed Clarke about California's implied consent law,[2] and that when the officer put Clarke into his car, Clarke "passively" refused to take either a breath or blood test by refusing to indicate which test he wished to take. Later, after the officer and Clarke got to the CHP's Santa Ana station, Clarke declined to take either test because he did not want to do so without "'representation.'" The officer advised Clarke he did not have the right to talk to an attorney or have an attorney present before making his chemical test decision. He again read to Clarke the chemical test admonition and Clarke again refused to take a test.

Exhibit 3 was a DMV printout of Clarke's driving record.

Once the HO admitted those exhibits, Clarke testified in his own defense. He stated he was familiar with his *Miranda*[3] rights, which he understood to be his right to consult with an attorney and to avoid self-incrimination. Clarke said he was not advised of those rights when he was arrested. Instead, while he was being transported to the CHP station,

---

[2] "California has enacted an implied consent statute providing noncriminal sanctions for an individual's refusal to submit to a blood-alcohol test when arrested for driving under the influence of alcohol or drugs." (*Hall v. Superior Court* (2016) 3 Cal.App.5th 792, 802.) When a driver challenges the suspension of his or her driver's license suspension based on a refusal to submit to testing, the issues to be determined at the APS hearing are "whether (1) the officer had reasonable cause to believe the individual was driving a vehicle in violation of section 23152 or 23153; (2) the person was lawfully arrested; (3) the arrestee was properly advised of the consequences of refusing to submit to or complete a blood-alcohol test; and (4) the person refused to submit to, or failed to complete, the blood-alcohol test." (*Hall* at p. 804)

[3] *Miranda v. Arizona* (1966) 384 U.S. 436.

the arresting officer informed him he was required to take a breath or blood test; he responded that he wanted to consult an attorney. When they arrived at the CHP station, Clarke indicated the officer told him he could not speak to an attorney prior to deciding which test to take.

Clarke testified that after he and the officer arrived at the station, the officer read him what he described as a "series of statements." He acknowledged that a part of the statements concerned submitting to a chemical test, followed by statements regarding "being on probation for DUI and submission to a preliminary alcohol screening test," and the "possible consequences for DUI if you're under the age of 21, have had multiple DUIs or have a commercial license." Clarke believed none of this applied to him which he found confusing.

Clarke testified he believed the officer "was picking parts of or provisions from a document, and then there was somebody else that was sort of directing him."[4] He stated, "he was reading the different parts of the document that he was selecting or being directed to, that was confusing . . . ." He said he did not "fully" understand what the officer was saying because of the "cadence" of his reading.

Clarke testified that after the officer finished reading to him at the station, he asked if Clarke would submit to a breath or blood test. Clarke responded that he wanted to speak to his attorney. He said the officer interrupted him as he was making that request, which Clarke said was "even more confusing." According to Clarke, the officer then said "okay" and walked

---

[4]    According to the arrest report, a second officer was present while the arresting officer read the chemical test admonition to Clarke.

away. At some point after the officer departed, Clarke was allowed to make a telephone call to his attorney. He then agreed to a blood draw.

HO Wallace then examined Clarke. She asked if the officer read the admonitions to him from a piece of paper. When Clarke indicated he did not understand her question, she clarified that she wanted to know if the officer read the statement contained on the admonition form, which she then began to read. Clarke agreed that was the admonishment he had been given.

The HO asked Clarke if the officer informed him he did not have the right to have an attorney present before stating whether he would submit to a test, before deciding which test to take, or during the test. She asked, "Did the officer state that to you?" Clarke responded that was unclear because the officer was "quite a ways away, and because of the initial provisions that he read that were not applicable."

Clarke testified it appeared the officer had documents that "had multiple provisions, and it seemed as if he was selecting which provisions to read." The HO asked how Clarke knew the officer was "skipping around and not reading directly from a form?" Clarke responded, "[j]ust based upon the cadence and the—and . . . ." The HO then asked, "[s]o, you're only assuming this, correct?" Clarke answered, "[w]ell, no. And him being directed, pointed out, okay, this, read this, by someone else."[5]

HO Wallace asked Clarke "did [he] read you the parts that you do not have the right to talk to an attorney?" Clarke replied, "[h]e did, but I was considering the—the totality of how it was being conducted and what he was reading, and I was asking for clarification."

---

[5] See fn. 2, *supra.*

7

HO Wallace asked Clarke if he told the officer he did not understand what he was reading from the form; Clarke responded, "[y]es. I said I'm not inebriated, and I was interrupted by [the officer] repeating the question. I then said:  as I explained before, I don't have any representation and I understand that I have a right to representation."  Clarke said he was "asking basically for clarification and didn't receive it."

The HO then asked Clarke what his understanding was when he was told he did not have a right to talk to an attorney or have an attorney present before deciding about a test. Clarke said he thought he should be able to "consult with an attorney relative to whether that was the case."

HO Wallace interrupted Clark and asked, "What do you mean? Whether what was the case?  If you're going to submit to a chemical test or not, or something else . . . [¶] . . . [¶] . . . in regards to the chemical test admonition?"  Clarke responded, "Right, whether there was a requirement. And so—and so, it seems that there should be some type of independent, authoritative criteria that . . . ."

HO Wallace again interrupted and said, "Okay. But we're not discussing that. We're discussing the fact that he told you you did not have a right to talk to a[n] attorney; is that correct?"  Clarke responded, "He did."

Clarke's attorney objected that the HO's questioning had become advocacy. HO Wallace denied it: "I asked him the question about did the officer read something from a form."  The HO added, "I don't understand his answer . . . and I'm trying to clarify . . . why was he asking for an attorney. [¶] Were you asking for [an] attorney because you [were] asking . . . could you refuse to test or [were] you asking . . . in regards to the whole chemical test admonition, the admonishment, that was my question."

HO Wallace then asked, "Mr. Clarke, did you not understand the chemical test admonishment?" Clarke responded, "I didn't understand why I didn't—why I could not consult with an attorney, and I was asking for clarification relative to that and relative to why—well, to consult with an attorney relative to that request."

On redirect, Clarke testified that if the officer had clarified and answered his questions, he would have submitted to a chemical test after speaking to his attorney.

HO Wallace issued her decision in September 2022. She rejected Clarke's defense, noting California law does not provide for the presence of an attorney during the admonition. She also found that Clarke's testimony as to the events was not credible and reimposed the suspension of Clarke's driver's license.

DISCUSSION

I

BACKGROUND LAW

"No State shall . . . deprive any person of life, liberty, or property, without due process of law." (U.S. Const., 14th Amend.) "[A] driver's license is 'property' that . . . may not [be seized by the state] without satisfying the requirements of the due process guarantee of the Fourteenth Amendment." (*Mackey v. Montrym* (1979) 443 U.S. 1, 20.) Article I, section 7 of the California Constitution contains a similar provision.

In *DUI Lawyers*, our colleagues in the Second District, after examining the procedures employed by the DMV during an APS hearing, concluded that "[a]lthough procedural fairness does not prohibit the combination of the advocacy and adjudicatory functions within a single administrative agency, tasking the same individual with both roles violates

9

the minimum constitutional standards of due process." (*DUI Lawyers, supra,* 77 Cal.App.5th at p. 532.) "Accordingly, we conclude combining the roles of advocate and adjudicator in a single person employed by the DMV violates due process under the Fourteenth Amendment and the California Constitution article I, section 7." (*Ibid.*)

In *Knudsen*, the court addressed a claim that the DMV HO's license suspension order which resulted from an APS hearing held in February 2022—two months before the decision in *DUI Lawyers* was issued—must also be reversed on due process grounds. The court concluded that, to resolve the appellant's due process claims, "it is first necessary to determine whether a particular driver's due process right to an impartial adjudicator was violated. Consistent with *DUI Lawyers*, that determination is made by assessing the administrative record and the revocation decision to see if the public hearing officer actually acted as both an adjudicator *and* an advocate, or merely acted as an adjudicator and a collector and developer of evidence. If the relevant documents demonstrate that the public hearing officer did not act as an advocate, then the driver's due process right to an impartial adjudicator was not violated, and the constitutional issue is resolved. If the relevant documents demonstrate that a public hearing officer actually acted as an advocate, then the driver's due process right to an impartial adjudicator is violated. In the latter circumstance, because we conclude that a violation of the due process right to an impartial adjudicator is a structural error, then the driver is entitled to a new APS hearing before a constitutionally impartial adjudicator." (*Knudsen, supra*, 101 Cal.App.5th at p. 193.)[6]

---

[6]    The court in *Knudsen* then concluded, based on its examination of

## II

### STANDARD OF REVIEW

Code of Civil Procedure section 1094.5 governs judicial review of adjudicatory decisions by administrative agencies. (*Young v. City of Coronado* (2017) 10 Cal.App.5th 408, 418.) "''A challenge to the procedural fairness of the administrative hearing is reviewed de novo on appeal because the ultimate determination of procedural fairness amounts to a question of law."''" (*Knudsen, supra*, 101 Cal.App.5th at p 210.) For purposes of the due process violation that is at issue in this case, we must determine whether the DMV's HO who was the case adjudicator improperly also assumed the role of an advocate.[7] If she did, the parties agreed at oral argument we must reverse the trial court's ruling and afford Clarke the opportunity for a new APS hearing.

## III

### DUE PROCESS

*DUI Lawyers*, *supra*, 77 Cal.App.5th 517 found Vehicle Code section 14112, subdivision (b), was unconstitutional (*id.* at p. 533), because it exempts APS hearings from the general Administrative Procedure Act requirement that "[a] person may not serve as presiding officer in an adjudicative proceeding [if] [¶] (1) [t]he person has served as investigator,

---

the complete record, "that the public hearing officer acted as both an adjudicator *and* an advocate, which entitles Knudsen to a new APS hearing." (*Knudsen, supra,* 101 Cal.App.5th at p. 194.)

[7] *Knudsen* places the burden on the DMV to demonstrate the HO did not act as an advocate. In this case, the record reflects the HO was aware of the *DUI Lawyers* decision and knew she was not permitted to act as an advocate.

prosecutor, or advocate in the proceeding or its preadjudicative stage" (Govt. Code, § 11425.30, subd. (a)). This was consistent with the court's finding that "tasking the same individual with both roles violates the minimum constitutional standards of due process." (*DUI Lawyers, supra,* 77 Cal.App.5th at p. 532.)

*DUI Lawyers* nonetheless observed that the DMV might, under certain circumstances, "task the same person" with multiple functions, without violating the constitutional right to due process. (*DUI Lawyers, supra,* 77 Cal.App.5th at p. 533, fn. 5.) Our Supreme Court said much the same thing in *Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 220, when it held that the same individual in an administrative agency may be tasked with "developing the facts and rendering a final decision."

We must therefore resolve whether in this case the HO impermissibly acted as both an advocate and an adjudicator. Although this is nominally a factual question, we agree with *Knudsen* that in this context it is ultimately a question of procedural fairness, which we review de novo. (*Knudsen, supra,* 101 Cal.App.5th at p. 210.)

It is not the employee's designation or title that is dispositive. It is the function, or functions, the employee actually performs during the APS hearing that will decide the issue. Here the HO marshalled, identified, and offered into evidence the DMV's exhibits. HO Wallace then overruled Clarke's objections and admitted those exhibits. The HO thereafter rigorously cross-examined Clarke. Considering her performance in its totality, we conclude HO Wallace assumed the prohibited dual roles of both adjudicator and advocate. When the HO thereafter suspended Clarke's driver's license, his right to receive due process was violated.

12

We agree with *Knudsen* that this due process violation constitutes structural error. As a result, the trial court's denial of Clarke's petition for a writ of mandate was erroneous and must be reversed.

We are hard pressed to imagine how a single DMV employee might discharge multiple functions during an APS hearing in a manner that will satisfy due process requirements. But we do not resolve that issue in this opinion. We hold only that the procedure employed by the DMV's HO in this case once again fell short of compliance with the Fourteenth Amendment and article I, section 7 of the California Constitution.

IV

CLARKE'S REFUSAL OF BREATH OR BLOOD TEST

Because we reverse the trial court's denial of Clarke's petition for a writ of mandate and direct the court on remand to grant the petition, Clarke's remaining issues, which relate to his alleged refusal to submit to a chemical test, become moot. Should the DMV elect to conduct a new APS hearing in this case, we express no opinion on the merits of those claims.

Since the case is remanded for further proceedings, appellant's request for judicial notice and respondent's request to augment the record are denied so that those issues may be considered in the first instance at a new APS hearing.

DISPOSITION

The trial court's order denying Clarke's petition for writ of mandate is reversed. The case is remanded with the direction that the court grant Clarke's petition. If the DMV elects to conduct a new APS hearing in this matter, that de novo hearing shall be conducted in a manner consistent

13

with the due process requirements set forth in *DUI Lawyers*. Clarke shall recover his costs on appeal.


GOETHALS, J.

I CONCUR:


MOORE, ACTING P. J.

**DELANEY, J.**, Dissenting.

I agree with the majority's analysis that, in assessing a due process claim in the context of a Department of Motor Vehicles (DMV) administrative hearing, it must be determined whether the DMV hearing officer (HO) acted as both an adjudicator and an advocate. (*Knudsen v. Department of Motor Vehicles* (2024) 101 Cal.App.5th 186, 193 (*Knudsen*).) I respectfully disagree with the majority's conclusion that the HO in this case acted as an advocate for the DMV. I find the HO acted as a factfinder and adjudicator, not as an advocate, and consequently, Clarke suffered no due process violation.

First, the majority fairly describes how the HO marshalled, identified, and presented evidence which supported Clarke's license suspension. But the law allows HOs to develop a factual record under these circumstances and they are expected to make evidentiary rulings. (See *Today's Fresh Start Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 220-221 [discussing cases in which a single person may properly "develop[] the facts and render[] a final decision"].) Significantly, neither the majority nor Clarke take the position those rulings were erroneous.

Second, the majority states the HO "rigorously cross-examined Clarke" during the hearing. I read the record differently. Clarke's testimony under examination by his attorney was somewhat contradictory and unclear regarding the cause and nature of his confusion about the requirement that he submit to a breath or blood test. He also admitted he did not understand some of the HO's questions, prompting the HO to ask additional clarifying questions. The HO acted within her proper, limited role as a factfinder in seeking to clarify Clarke's testimony before making her decision. (See, *Knudsen, supra*, 101 Cal.App.5th at p. 220 [in a case where the adjudicator

1

admits documents and otherwise engages in a "fact-finder" role, that role can include asking "clarifying" questions of a witness to develop the factual record].)

It is worth noting that, at the outset of the hearing, the HO expressly acknowledged it was not her role to function as an advocate. Although the HO's understanding of her limited role at the hearing is not dispositive, I agree with the trial court it is persuasive, particularly where, as here, the HO conducted the hearing as a factfinder by proffering evidence and asking clarifying questions, not as an advocate.

For these reasons, I would affirm the trial court's denial of Clarke's petition for writ of mandate.


DELANEY, J.

2